**Opinion filed September 29, 2011**



# In The

# Eleventh Court of Appeals

_____

## No. 11-09-00298-CV

_____

**PROVIDENCE LAND SERVICES, LLC, Appellant**

**V.**

**TRAVIS JONES ET AL., Appellees**

_____

**ROY COOPER ET AL., Cross-Appellants**

**V.**

**PROVIDENCE LAND SERVICES, LLC, Cross-Appellee**

**On Appeal from the 32nd District Court**

**Mitchell County, Texas**

**Trial Court Cause No. 15,363**

## O P I N I O N

This appeal arises from a dispute between a landlord and its tenants concerning residential lake lots located at Lake Colorado City. The controversy concerns the duration of the written real estate leases executed by the tenants and the landlord's predecessors-in-interest. After a bench trial, the trial court determined that one category of leases constituted ninety-nine year leases and that another category of leases constituted tenancies at will. The landlord appeals

the trial court's ruling on the ninety-nine year leases, and the tenants of the leases determined to be tenancies at will are appealing that ruling. We affirm in part and reverse and render in part.

*Background Facts*

Graydon M. and Inez Howell previously owned the land where the lake lots are located. Beginning in the 1970s, the Howells began to lease individual lots to people who wanted lake property. The lake lots were known as the "Howell Properties," and they consisted of forty-three total lots. The underlying litigation involved twenty-five of these lots.

The Howells and their tenants executed written lease agreements for each of the lots. The terms of the leases were drafted by the Howells without the aid of an attorney. With respect to the duration of the leases, the leases can be classified into three categories: (1) leases that expressly provided that they were "indefinite"; (2) leases with no express end date; and (3) leases with fixed termination dates. The trial court labeled these categories respectively as "Indefinite Term Leases," "No End Term Leases," and "Fixed Term Leases" in the court's judgment. We will also use these descriptions for the sake of clarity.

Graydon Howell died in 1988. After his death, Inez Howell continued to administer Howell Properties until her death in 1996. The Howells' daughter, Carolyn Howell, assumed control of Howell Properties after her mother's death. She continued to administer the lots until her death in 2007.

There were no disputes concerning the duration of the leases during the lifetimes of Graydon, Inez, and Carolyn. The events giving rise to this underlying action occurred when control of Howell Properties passed to Carolyn's brother, Rex Glenn Howell, at her death in 2007. Rex conveyed the lots to appellant, Providence Land Services, LLC, in January 2008. Soon after acquiring the lake lots, Providence sent new leases to the tenants proposing new lease terms including thirty-day termination provisions and higher lease payments. Providence based this action on its assertion that the leases signed by the tenants and the Howells were tenancies at will. The tenants instituted the underlying action against Providence in an effort to establish that their original leases were long-term leases as a result of written and verbal agreements that they had made with the Howells.[1]

---

[1]The tenants subsequently added Rex Glenn Howell as a defendant. Among other things, they asserted that, by selling the property to Providence, Rex breached written and verbal agreements that they had made with his parents and sister. As a result of a settlement, Rex was no longer a party at the time of trial.

*Indefinite Term Leases*

In its first issue, Providence attacks the trial court's construction of the Indefinite Term Leases. These leases provided as follows with respect to their duration:

> For the sum of $____, the receipt of which is hereby acknowledged, a like annual rental of $____ payable each year on or before _____, Lessor will lease to Lessee the following described lot or parcel of ground on shores of Lake Colorado City, for residential purposes only, for the period from this date until Indefinite, under the following stipulations, agreements, and restrictions.

The trial court determined that the use of the word "indefinite" to define the end date of the leases' duration was ambiguous as a matter of law. Accordingly, the trial court considered the oral testimony and documentary evidence submitted by the tenants to the effect that they and the Howells intended to create long-term leases by the use of the term "indefinite." The tenants presented a great deal of evidence regarding their work to clear the lake lots for occupancy and the substantial improvements that they made on the lake lots based upon the expectancy of being there many years. The trial court ultimately interpreted the duration of the Indefinite Term Leases to be ninety-nine years from the date when they were entered.

The trial court's determination that the use of the term "indefinite" was ambiguous is a threshold issue that we must resolve. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). In construing a contract, we must ascertain the true intentions of the parties as expressed in the writing. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). In the absence of fraud or mistake, the writing alone will be deemed to express the intention of the parties, and courts will enforce an unambiguous instrument as written. *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 524 (Tex. 1982); *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726 (Tex. 1981); *Rutherford v. Randal*, 593 S.W.2d 949 (Tex. 1980); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex. 1968). The court is not looking for the subjective intent of the parties, which, as here, is conflicting and in fact creates an ambiguity in the language of the instrument; instead, it is the objective intent, the intent expressed or apparent in the writing, which is sought. *Forderhause*, 641 S.W.2d at 525; *City of Pinehurst*, 432 S.W.2d at 518.

A contract is not ambiguous if it is so worded that it can be given a definite or certain legal meaning. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 728 (Tex. 2001). An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Id.* In

this regard, parol evidence cannot be admitted to create an ambiguity. *Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520. Rather, a contract is only ambiguous if its language is subject to two or more reasonable interpretations. *See Monsanto Co. v. Boustany*, 73 S.W.3d 225, 229 (Tex. 2002).

The key word in our analysis is use of the word "indefinite" to define the end date of the term of the leases. As set out above, the leases defined their duration as "for the period from this date until <u>Indefinite</u>."[2] The tenants contend that "indefinite" is subject to two meanings: a "legal definition" of uncertain or vague, and a layperson's definition of "not limited." The tenants are essentially contending that the definition of "not limited" means the same thing as "unlimited." Thus, the tenants contend that the use of "indefinite" in the leases indicates that their duration was ninety-nine years or longer.

We disagree with the tenants' alternative construction of "indefinite." "Indefinite" is not synonymous with "infinity," "perpetual," or "forever." The definition of "not limited" for "indefinite" is simply another way of saying that it means "uncertain." The use of "indefinite" in the leases has a definite and certain legal meaning; the leases, as written, have no end date. As a matter of law, the leases are not ambiguous. Accordingly, parol evidence in the form of the evidence from the affected tenants regarding their understanding of the duration of the leases and the oral representations of the Howells is not admissible to alter the construction of the meaning of "indefinite."

A lease contract must, as to its duration, be certain as to time or refer to a certainty. *Holcombe v. Lorino*, 79 S.W.2d 307, 310 (Tex. 1935); *Hill v. Hunter*, 157 S.W. 247 (Tex. Civ. App.—Austin 1913, writ ref'd). If the tenant is holding the premises for no certain time as provided by the contract, he is merely a tenant at will, and the tenancy may be terminated at the will of either party. *Holcombe*, 79 S.W.2d at 310. As we previously held, "A lease for an **indefinite** and uncertain length of time is an estate at will." *Urban v. Crawley*, 206 S.W.2d 158, 160 (Tex. Civ. App.—Eastland 1947, writ ref'd n.r.e.) (emphasis added). Accordingly, the tenants holding under the Indefinite Term Leases are tenants at will.

The tenants additionally argue on appeal that Providence is barred under the doctrine of promissory estoppel from enforcing the leases as tenancies at will. The trial court's judgment contains a finding in favor of the tenants "on the issue of promissory estoppel." The tenants contend that they detrimentally relied on the representations made by the Howells that they could

---

[2]The word "Indefinite" was handwritten into a blank on a pre-printed form.

stay as long as they wanted on the lake lots by making significant, permanent improvements to the lots.

A lease of real estate for a term longer than one year must be in writing in order to be enforceable under the statute of frauds. TEX. BUS. & COM. CODE ANN. § 26.01 (Vernon 2009). In order to satisfy the statute of frauds, there must be a written memorandum that is complete within itself in every detail and that contains all of the essential elements of the agreement so that the contract can be ascertained from the writing without resort to oral testimony. *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978). Accordingly, any oral agreement or representation by the Howells regarding the duration of the leases would be barred by the statute of frauds.

The tenants are asserting promissory estoppel as an exception to the statute of frauds. By doing so, they are attempting to either create a new lease agreement with an unlimited duration or alter the legal effect of the existing lease. When promissory estoppel is raised to bar the application of the statute of frauds, there is a requirement that the promisor promised to sign a written document complying with the statute of frauds. *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982). To invoke this doctrine, the tenants needed to prove an oral promise by the Howells to sign a written agreement that would comply with the statute of frauds by setting out an end date for the lease's duration. *See Nagle*, 633 S.W.2d at 800; *Consol. Petroleum Indus., Inc. v. Jacobs*, 648 S.W.2d 363, 367 (Tex. App.—Eastland 1983, writ ref'd n.r.e.). The record does not reflect that the Howells promised to sign another lease agreement with different terms pertaining to its duration. Accordingly, the tenants' promissory estoppel argument fails.

Providence's first issue pertaining to the construction of the Indefinite Term Leases is sustained. We conclude that these leases constituted tenancies at will as a matter of law. We do not reach Providence's second issue pertaining to the amount of rent due under the Indefinite Term Leases as a result of our ruling on its first issue.

*Other Leases*

Cross-appellants, Roy Cooper, Sharla Cooper, Shannon Covington, Gail Greer, Ronnie Greer, Darlene Grice, Ronnie Jones, Eddie Moss, Abel Ruiz, and Frances Trotter, raise a single issue challenging the trial court's ruling that the No End Term Leases constitute tenancies at will. The trial court based this ruling on the fact that these leases did not contain terms pertaining to their duration. The trial court did not consider the tenants' parol evidence regarding the Howells' intent that these leases were to be long-term leases. The tenants contend that the No

5

End Term Leases are ambiguous and that parol evidence is admissible to resolve this alleged ambiguity.

Ambiguity in contract language is not to be confused with silence. Ambiguity results when the intention of the parties is expressed in language that is susceptible of more than one meaning. *Med. Towers v. St. Luke's Episcopal Hosp.*, 750 S.W.2d 820, 822 (Tex. App.—Houston [14th Dist.] 1988, writ denied). In contrast, when a contract is silent, the question is not one of interpreting the language but, rather, one of determining its effect. *Id.*

We agree with the trial court's interpretation of the No End Term Leases. As noted previously, a lease for an uncertain length of time is an estate at will. *Urban*, 206 S.W.2d at 160. "Courts are without authority to supply the missing terms of a contract which the parties themselves had either not seen fit to place in their agreement, or which they omitted to agree upon." *Dempsey v. King*, 662 S.W.2d 725, 728 (Tex. App.—Austin 1983, writ dism'd). Cross-appellants additionally contend that Providence is barred under the doctrine of promissory estoppel from enforcing the No End Term Leases and the expired Fixed Term Leases as tenancies at will. The same reasoning that precludes the tenants' reliance on promissory estoppel with respect to the Indefinite Term Leases also applies to the No End Term Leases and the Fixed Term Leases. Cross-appellants' sole issue is overruled.

*This Court's Ruling*

The judgment of the trial court insofar as it pertains to the Indefinite Term Leases is reversed, and judgment is rendered in favor of Providence. In all other things, the judgment of the trial court is affirmed.

TERRY McCALL

JUSTICE

September 29, 2011

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

6