ACCEPTED
06-16-00035-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
10/6/2016 4:58:17 PM
DEBBIE AUTREY
CLERK

**No. 06-16-00035-CV**

In the Court of Appeals for the
Sixth Court of Appeals District of Texas
Texarkana, Texas

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
10/7/2016 9:06:00 AM
DEBBIE AUTREY
Clerk

—————————————————————————————

**EAST TEXAS COPY SYSTEMS, INC.**
*Appellant,*

v.

**JASON PLAYER**
*Appellee.*

_____

On Appeal from the County Court at Law #2
Gregg County, Texas

_____

_____

**BRIEF OF APPELLEE**

_____

Eric M. Albritton
Texas State Bar No. 00790215
ema@emafirm.com
**ALBRITTON LAW FIRM**
P.O. Box 2649
Longview, Texas 75606
Telephone:  (903) 757-8449
Facsimile:  (903) 758-7397

ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

The undersigned counsel certifies that the following persons have an interest in the outcome of this case.

| **Appellant** | **Counsel for Appellant** |
|---|---|
| East Texas Copy Systems, Inc. | Michael E. Starr<br>Texas Bar No. 1907840<br>mstarr@ccfww.com<br>COGHLAN, CROWSON, LLP<br>1127 Judson Road, Suite 211<br>P.O. Box 2665<br>Longview, Texas 75606-2665 |
| **Appellee** | **Counsel for Appellee** |
| Jason Player | Eric M. Albritton<br>Texas State Bar No. 00790215<br>ema@emafirm.com<br>Shawn A. Latchford<br>Texas State Bar No. 24066603<br>sal@emafirm.com<br>ALBRITTON LAW FIRM<br>P.O. Box 2649<br>Longview, Texas 75606 |

# TABLE OF CONTENTS

I. STATEMENT OF THE CASE ...................................................................... viii

II. STATEMENT REGARDING ORAL ARGUMENT .................................. viii

III. ISSUES PRESENTED .................................................................................. ix

IV. INTRODUCTION ...........................................................................................1

V. STATEMENT OF FACTS ...............................................................................2

VI. SUMMARY OF ARGUMENT .......................................................................6

VII. ARGUMENT....................................................................................................7

    A. Standard of Review on Appeal..................................................................7

    B. General Legal Principles of Contract Construction ..............................7

        1. The primary goal of contract construction is to ascertain the objective intent of the parties as expressed in the agreement.....7

        2. Courts should interpret contracts using plain and ordinary meaning. ...................................................................................8

        3. Texas law prohibits rewriting a contract under the guise of interpretation. ..............................................................................9

        4. A contract is only ambiguous when it is reasonably susceptible to more than one interpretation. ...........................10

    C. The trial court properly found the plain language of the parties' Agreements was unambiguous.........................................................10

        1. The Agreements unambiguously state they are no longer binding if Player's employment is terminated for any reason other than cause within two years of the date of the Agreements. ..........................................................................11

        2. The plain and ordinary meaning of the Disputed Clause gives meaning to the parties' Agreements...............................13

D.    The trial court properly rejected ETCS's request to rewrite the Disputed Clause under the guise of harmonizing the Agreements. ....14

       1.    It is unnecessary to harmonize the Agreements because there are no inconsistent or discordant parts..............................15

       2.    The plain and ordinary meaning of the Disputed Clause does not render Player's promise illusory.................................18

       3.    ETCS's request to harmonize the Agreements is really a request to rewrite the Agreements contrary to Texas law. .......19

       4.    The use of the passive voice in the Disputed Clause supports the plain and ordinary meaning adopted by the trial court. .......23

E.    ETCS's attempt to rewrite the Disputed Clause cannot create ambiguity......................................................................................24

VIII.  CONCLUSION...................................................................................25

IX.   PRAYER.............................................................................................26

iii

**Cases**

*Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154 (Tex. 2003)....................9, 10

*Anderson v. Twin City Rapid Transit Co.*, 84 N.W.2d 593 (Minn. 1957)...............23

*Anglo-Dutch Petroleum v. Greenberg Peden, P.C.*, 352 S.W.3d 445 (Tex. 2011)...8

*Cleveland Constr., Inc. v. Levco Constr. Inc.*, 359 S.W.3d 843
(Tex. App.—Houston [1st Dist.] 2012, pet. dism'd)....................................19

*Coker v. Coker*, 650 S.W.2d 391 (Tex. 1983) .......................................................10

*Craig Sessions, M.D., P.A. v. TH Healthcare, Ltd.*,
412 S.W.3d 738 (Tex. App.—Texarkana 2013, no pet.) ...................... *passim*

*El Paso Field Servs. v. Mastec N.A.*, 389 S.W.3d 802 (Tex. 2012) ......... 7, 9, 10, 16

*Epps v. Fowler*, 351 S.W.3d 862 (Tex. 2011) ........................................................7

*Fletcher v. Energy Res. Tech. GOM, Inc.*, 2012 Tex. App. LEXIS 7034
(Tex. App.—Houston [1st Dist.] Aug. 23, 2012, no pet.)............................18

*FPL Energy v. TXU Portfolio Mgt. Co.*, 426 S.W.3d 59 (Tex. 2014).................7, 16

*Hamblin v. Lamont*, 433 S.W.3d 51
(Tex. App.—San Antonio 2013, pet. denied)..........................................8, 21

*Heritage Res. v. Nationsbank*, 939 S.W.2d 118 (Tex. 1996) .............................8, 22

*Hoffman v. Am. Soc'y for Technion-Israel Inst. of Tech., Inc.*,
2013 U.S. Dist. LEXIS 9921 (S.D. Cal. Jan. 23, 2013) ..............................23

*In re 21st Century Grp., LLC*, 2012 Tex. App. LEXIS 5701
(Tex. App.—Texarkana 2012, pet. denied)................................................8, 9

*In re Serv. Corp. Int'l*, 355 S.W.3d 655 (Tex. 2011)...............................................7

*InterPay, Inc. v. Bigham*,
2002 U.S. Dist. LEXIS 16202 (D. Mass. Aug. 15, 2002)............................23

*J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003) ................................25

*Karen Corp. v. Burlington Northern & Santa Fe Ry.*,
    107 S.W.3d 118 (Tex. App.—Fort Worth 2003, pet. denied) ........................8

*LG Ins. Mgmt. Servs., L.P. v. Leick*,
    378 S.W.3d 632 (Tex. App.—Dallas 2012, pet. denied) ........................ 10, 21

*MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*,
    995 S.W.2d 647 (Tex. 1999) ...............................................................7

*McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*,
    736 F.3d 375 (5th Cir. 2013) ....................................................9, 22

*Meckes v. Cina*, 75 A.D.2d 470 (N.Y. App.—4th Div. July 10, 1980) ...................23

*Natural Gas Clearinghouse v. Midgard Energy Co.*,
    113 S.W.3d 400 (Tex. App.—Amarillo 2003, pet. denied) ...........................9

*Providence Land Servs., LLC v. Jones*,
    353 S.W.3d 538 (Tex. App.—Eastland 2011, no pet.)...................................8

*Provident Life & Accident Ins. Co. v. Knott*,
    128 S.W.3d 211 (Tex. 2003) .......................................................7

*R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*,
    596 S.W.2d 517 (Tex. 1980) .......................................................7

*Smith v. Carter & Burgess, Inc.*, 2005 Tex. App. LEXIS 1140
    (Tex. App.—Fort Worth Feb. 10, 2005, no pet.) ..........................................18

*Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*,
    327 S.W.3d 104 (Tex. 2010) .......................................................13

*Sun Oil Co. v. Madeley*, 626 S.W.2d 726 (Tex. 1981) ...........................................10

*Vincent v. Bank of Am., N.A.*,
    109 S.W.3d 856 (Tex. App.—Dallas 2003, pet. denied) ...............................8

*Walden v. Affiliated Computer Servs.*,
    97 S.W.3d 303 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).........24

*Willenson v. Miner, Barnhill & Galland, P.C.*, 998 N.E.2d 984,
    2011 Ill. App. Unpub. LEXIS 579 (Ill. App. [1st Dist.] April 14, 2011)......22

**Treatises**

Restatement (Second) of Contracts § 224 (1981)....................................................19

**Other**

BRYAN A. GARNER, THE REDBOOK: A MANUAL ON LEGAL STYLE
(Thompson/West 2006) (2002)..............................................................................24

**No. 06-16-00035-CV**

In the Court of Appeals for the
Sixth Court of Appeals District of Texas
Texarkana, Texas

_____

**EAST TEXAS COPY SYSTEMS, INC.**
*Appellant,*

v.

**JASON PLAYER**
*Appellee.*

_____

On Appeal from the County Court at Law #2
Gregg County, Texas

_____

TO THE HONORABLE SIXTH COURT OF APPEALS:

Appellee in the above-captioned appeal, Jason Player, hereby files his brief respectfully requesting this Honorable Sixth Court of Appeals overrule the issues presented by Appellant, East Texas Copy Systems, Inc., and affirm the judgment of the trial court, County Court at Law #2 of Gregg County, Texas.

# I.  STATEMENT OF THE CASE

Appellee, Jason Player ("Player"), sued Appellant, East Texas Copy Systems, Inc. ("ETCS"), for a declaratory judgment that non-compete clauses were no longer binding under the express terms of the parties' agreements. CR 4-25.[1] Player moved for summary judgment that the non-compete clauses were no longer binding under the express terms of the parties' agreements based on their plain and ordinary meaning. CR 28-69. ETCS filed a cross-motion for summary judgment that the non-compete clauses were still binding. CR 75-99. After full briefing on both motions and oral argument (RR, Vol. 1, 1-37)[2] the trial court granted Player's motion for summary judgment and denied ETCS's motion for summary judgment (RR, Vol. 1, 35-36). The trial court issued Final Judgment in favor of Player (CR 177-178). ETCS filed this appeal. CR 179-180 (Notice of Appeal).

# II.  STATEMENT REGARDING ORAL ARGUMENT

Player agrees with ETCS that oral argument may aid the Court's consideration of the issues in this appeal and respectfully requests oral argument.

---

[1] References to "CR [page number]" refer to the page number of the Clerk's Record in this appeal.
[2] References to "RR, Vol. [number], [number]" refer to the volume and page number of the Reporter's Record in this appeal.

### III.   ISSUES PRESENTED

Issue 1:   Did the trial court properly find the parties' unambiguous agreements were no longer binding based on the plain language of those agreements when Player's employment with ETCS was terminated for a reason other than cause within two years of the date of the agreements?

Issue 2:   Did the trial court properly reject ETCS's argument that its attempt to rewrite the parties' agreements rendered those agreements ambiguous?

# IV.  INTRODUCTION

Appellant, East Texas Copy Systems, Inc. ("ETCS"), has buyer's remorse. ETCS asks the Court to rewrite multiple agreements it freely and voluntarily entered into with Appellee, Jason Player ("Player"), in hopes that this Court will give ETCS a better deal than it bargained for.  Player and ETCS entered into multiple agreements creating a working relationship between them to provide computer services to customers in the East Texas area, including former customers of Player. The agreements between ETCS and Player included covenants not to compete.  The covenants not to compete state that they are no longer binding on Player if his employment is terminated within two years of the date of the parties' agreements for any reason other than cause.  Player voluntarily resigned and terminated his employment with ETCS prior to two years after the agreements, as expressly provided by the agreements.  Since Player did not work for ETCS for more than two years, the covenants not to compete are no longer binding on Player by their own terms.  ETCS now asks this Court to rewrite the parties' agreements under the guise of harmonizing those documents.  The trial court properly rejected ETCS's request as contrary to the plain language of the agreements, the intentions of the parties as expressed in those agreements, and Texas law.  This Court should reject ETCS's request to rewrite the parties' agreements for all the same reasons, overrule ETCS's issues on appeal, and affirm the trial court's Final Judgment.

1

Prior to July 1, 2013, Player was providing computer services to customers in Longview, Texas and throughout the East Texas area. CR 42. ETCS wanted to work with Player to provide service to Player's customers. *See* CR 9 (requiring Player's employment with ETCS). To that end, Player and ETCS negotiated and entered into a series of agreements whereby ETCS would acquire Player's customer list and Player would work for ETCS to provide service to those customers. CR 9-24. Player and ETCS effectively entered into those agreements on July 1, 2013 and went into business together on that date. CR 9-24.

Section A of the parties' agreement titled "Asset Purchase Agreement" ("APA") contains a clause titled "Consideration" which states that ETCS shall pay Player $300,000. CR 9. The Consideration clause also states that Player and ETCS entered into an employment contract which is part of the consideration for the APA. CR 9. Section A of the APA also contains a clause titled "Payment" which states that $50,000 will be paid to Player by ETCS upon the execution of the APA and ETCS will pay Player 10 monthly payments of $25,000 after the execution of the APA to make up the remaining $250,000 of the monetary consideration. CR 9. Section B of the APA contains a clause titled "Non-Compete" (the "Non-Compete Clause"). CR 11. The Non-Complete Clause of the APA states in relevant part:

> If Jason Player's employment with Buyer is terminated prior to two year [sic] from the date of this Agreement for any reason other than a for cause termination, this Non-Compete clause will no longer be binding.

CR 11.

An employment agreement titled "Employment Contract" is attached to the APA as Exhibit B. CR 16-20. Paragraph 4 of the Employment Contract states that Player will be paid an annual salary of $93,000. CR 17. Paragraph 8 of the Employment Contract states that either party may terminate Player's employment with ETCS. CR 18. Specifically, the Employment Contract provides Player's employment with ETCS "may be terminated *by ETCS* upon 60 days written notice, *and by Jason Player* upon 60 days written notice." CR 18 (emphasis added).

ETCS and Player also executed an agreement titled "NonCompete [sic] Agreement" (the "Non-Compete Agreement"). CR 21-24. The Non-Compete Agreement states in relevant part:

> If Jason Player's employment with Buyer is terminated prior to two years from the date of this Agreement for any reason other than a for cause termination, this Non-Compete Agreement will no longer be binding.

CR 22.

On April 29, 2015, Jason Player gave 60 days of written notice to ETCS that he was voluntarily resigning from his position at ETCS, pursuant to his right to do

3

so under ¶ 8 of the Employment Contract. CR 67-68. On June 30, 2015, Player's employment with ETCS was terminated by Player's voluntarily resignation. CR 43.

On July 8, 2015, Player received a letter from Michael C. Coker, an attorney representing ETCS. CR 54. ETCS, through Mr. Coker, made a demand that Player "immediately cease any" "business that competes with ETCS accounts." CR 54. ETCS, through Mr. Coker, also threatened that if Player did not cease conducting business, that ETCS would take "additional action" against him and that he would be responsible for damages "and all attorneys' fees and related expenses." CR 54.

On July 10, 2015, Player filed a petition in the trial court seeking a declaratory judgment that the Non-Compete Clause and the Non-Compete Agreement are no longer binding on Player. CR 4-25. On August 7, 2015, ETCS answered by filing a general denial. CR 26-27. On September 18, 2015, ETCS's counsel sent Player a demand letter seeking payment of $199,142.85 based on twelve months of revenue from some of Player's former customers. CR 65-66.

On November 12, 2015, Player filed a Motion for Summary Judgment ("Player's MSJ") seeking a declaratory judgment that the Non-Compete Agreement and Non-Compete Clause were no longer binding on Player based on the clear and unambiguous language of those agreements. CR 28-69.

On November 23, 2015, ETCS filed a counterclaim against Player based on Player's alleged breach of a covenant not to compete. CR 70-74.

4

On November 30, 2015, ETCS filed a cross-motion for partial summary judgment ("ETCS's MSJ") asking the Court to hold as a matter of law that "a noncompetition agreement ('NCA') between ETCS and [Player], prevents Player from competing with ETCS in an area within a 60 mile radius of Longview, Texas for one year from the end of Player's employment with ETCS. In the alternative, ETCS ask[ed] the Court to hold as a matter of law that the language of the NCA is ambiguous and set for trial the question of the intent of the parties." CR 78.

On December 14, 2015, Player answered ETCS's counterclaims generally denying and asserting defenses to ETCS's breach of contract claim. CR 158-161.

On December 21, 2015, after briefing and oral argument, the trial court granted Player's MSJ and denied ETCS's MSJ. RR, Vol. 1, 35-36. When the trial court granted Player's MSJ from the bench the trial judge specifically noted he was considering the parties' agreements as a whole, stating "the way 'termination' is used throughout all the agreements tied in, it anticipates termination by either the plaintiff or the defendant." RR, Vol. 1, 35-36. ETCS filed a Motion for Reconsideration which was denied by the trial court. CR 162-166, 176. On April 1, 2016, the trial court entered Final Judgment for Player. CR 177-78.

On May 6, 2016, ETCS filed its notice of appeal. CR 179-180. On August 4, 2016, ETCS filed its brief in this appeal.

## VI.     SUMMARY OF ARGUMENT

Appellant, East Texas Copy Systems, Inc. ("ETCS"), has buyer's remorse. ETCS asks this Court to rewrite the plain terms of multiple agreements it freely and voluntarily entered into with Appellee, Jason Player ("Player"), in hopes that this Court will give it a better deal.  Player and ETCS entered into Agreements to form a working relationship.  CR 9-24.  Their Agreements include covenants not to compete that are conditioned on Player's employment with ETCS for more than two years after the date of the agreements.  CR 11, 22.  Prior to two years after the date of the agreements, Player terminated his employment with ETCS, as expressly provided by the agreements, and went back to work for himself, as expressly provided by the agreements.  Since Player did not work for ETCS for more than two years, the covenants not to compete are no longer binding, by their own terms.  ETCS now asks this Court to rewrite the parties' agreements so that Player cannot return to work for himself under the guise of "harmonizing" the agreements as a whole. The trial court properly rejected ETCS's unreasonable attempt to rewrite the parties' agreements as contrary to the plain language of the agreements, the intentions of the parties, and Texas law.  This Court should reject ETCS's request to rewrite the parties' agreements, overrule ETCS's issues on appeal, and affirm the trial court's Final Judgment in favor of Player.

6

# VII. ARGUMENT

## A. Standard of Review on Appeal

"When a contract is not ambiguous, the construction of the written instrument is a question of law for the court." *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980). Thus, a trial court's legal conclusions regarding an unambiguous written instrument are reviewed *de novo*. *MCI Telecomms.*, 995 S.W.2d at 651. An appellate court "must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

## B. Legal Principles of Contract Construction

### 1. The primary goal of contract construction is to ascertain the objective intent of the parties as expressed in the agreement.

The primary concern of a court interpreting a contract is to ascertain, and to give effect to, the intentions of the parties as expressed in the contract. *See, e.g.*, *FPL Energy v. TXU Portfolio Mgt. Co.*, 426 S.W.3d 59, 63 (Tex. 2014); *El Paso Field Servs. v. Mastec N.A.*, 389 S.W.3d 802, 805 (Tex. 2012); *In re Serv. Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011); *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011). It is the parties' intent "***as expressed in the agreement***" that Texas courts

seek to determine. *Anglo-Dutch Petroleum v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 451 (Tex. 2011) (emphasis in original). The "intentions" in question are objective as expressed in the agreement, rather than the subjective intentions not stated in the agreement. *Hamblin v. Lamont*, 433 S.W.3d 51, 54 (Tex. App.—San Antonio 2013, pet. denied); *Providence Land Servs., LLC v. Jones*, 353 S.W.3d 538, 541 (Tex. App.—Eastland 2011, no pet.); *Vincent v. Bank of Am., N.A.*, 109 S.W.3d 856, 866 (Tex. App.—Dallas 2003, pet. denied); *Karen Corp. v. Burlington Northern & Santa Fe Ry.*, 107 S.W.3d 118, 122 (Tex. App.—Fort Worth 2003, pet. denied). Extrinsic evidence cannot be used to show that the parties could have meant or probably meant something other than what their agreement stated. *Anglo-Dutch Petroleum*, 352 S.W.3d at 451. Thus, what the parties objectively expressed in the contract governs the meaning of the contract, not subsequently claimed or unexpressed opinions about what was intended. *Craig Sessions, M.D., P.A. v. TH Healthcare, Ltd.*, 412 S.W.3d 738, 742–743 (Tex. App.—Texarkana 2013, no pet.).

   2.    Courts should interpret contracts using plain and ordinary meaning.

When construing a contract, Texas courts "give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Heritage Res. v. Nationsbank*, 939 S.W.2d 118, 121 (Tex. 1996); *In re 21st Century Grp., LLC*, No. 06-12-00064-CV, 2012 Tex. App. LEXIS 5701, at *6 (Tex. App.—Texarkana 2012, pet. denied) ("we give

terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense"); *see also McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 378 (5th Cir. 2013) ("Under Texas law, words not defined in a contract are to be given their 'plain and ordinary meaning.'").

3.   <u>Texas law prohibits rewriting a contract under the guise of interpretation.</u>

In discerning the parties' intent, Texas courts "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *El Paso Field Servs.*, 389 S.W.3d at 805. However, a court may not rewrite the parties' contract or add to its language under the guise of interpretation. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003); *In re 21st Century Grp., LLC*, 2012 Tex. App. LEXIS 5701, at *6. "Unless the contract is ambiguous, the court will enforce it as written." *In re 21st Century Grp., LLC*, 2012 Tex. App. LEXIS 5701, at *6. For a court to change the parties' contract merely because it does not like the contract, or because one party subsequently finds it distasteful, undermines the sanctity afforded a contract and the expectations of the persons who created and relied on it. *Natural Gas Clearinghouse v. Midgard Energy Co.*, 113 S.W.3d 400, 407 (Tex. App.— Amarillo 2003, pet. denied). A court will not rewrite a contract to insert provisions that the parties could have included, nor will a court imply a restraint for which the

parties did not bargain. *LG Ins. Mgmt. Servs., L.P. v. Leick*, 378 S.W.3d 632, 638 (Tex. App.—Dallas 2012, pet. denied). Likewise, a court may not imply a term merely to make a contract fair, wise, or just. *Id.* "The role of the courts is not to protect parties from their own agreements, but to enforce contracts that parties enter into freely and voluntarily." *El Paso Field Servs.*, 389 S.W.3d at 810–11.

4.    A contract is only ambiguous when it is reasonably susceptible to more than one interpretation.

A contract is only ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). When a written contract is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous, and a court should construe the contract as a matter of law. *Am. Mfrs. Mut. Ins.*, 124 S.W.3d at 157. In the absence of fraud or mistake, the writing alone is deemed to express the parties' intention, and courts will enforce an unambiguous instrument as written. *Craig Sessions*, 412 S.W.3d at 743–744; *see also Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 728 (Tex. 1981) (Texas courts enforce unambiguous agreements as written).

**C.    The trial court properly found the plain language of the parties' agreements was unambiguous.**

The Non-Compete Clause of the Asset Purchase Agreement and Non-Compete Agreement (collectively, the "Agreements") unambiguously state that if

Player's employment with ETCS is terminated for any reason other than cause, prior to two years from the date of those agreements, they are no longer binding. The plain and ordinary meaning is the only reasonable interpretation of the Agreements, consistent with the parties' intent as expressed in the Agreements and Texas law.

1. <u>The Agreements unambiguously state they are no longer binding if Player's employment is terminated for any reason other than cause within two years of the date of the Agreements.</u>

The Non-Compete Clause and Non-Compete Agreement both unambiguously state that they do not bind Player if his employment with ETCS is terminated for any reason other than cause less than two years after the execution of the Agreements. The Non-Complete Clause of the APA states in full:

> **Non-Compete:** See Non-Compete Agreement for full details. Upon finalizing this transaction, the Seller will not directly or indirectly engage in any business competitive with the type of business Jason Player is engaged in prior to this Agreement other than his employment with Buyer for a period of two years. This covenant shall apply to the geographical area that includes the area within a 60 miles-mile [sic] radius of Longview, Texas. Directly or indirectly engaging in any competitive business includes, but is not limited to: (i) engaging in a business as owner, partner, or agent, (ii) becoming an employee of any third party that is engaged in such business, (iii) becoming interested directly or indirectly in any such business, or (iv) soliciting any customer or current Executive or Employee of Jason Player for the benefit of a third party that is engaged in such business. East Texas Copy Systems agrees that this non-compete provision will not adversely affect East Texas Copy Systems' livelihood. <u>If Jason Player's employment with Buyer is **terminated prior to two year** [sic] from the date of this Agreement **for any reason other than a for cause termination**, this Non-Compete clause will **no longer be binding**.</u>

11

CR 11 (emphasis added).  The Non-Compete Agreement contains the same language with respect to the conditional nature of the agreement not to compete:

> **1. NONCOMPETE COVENANT.**  For a period of 2 years after the effective date of this Agreement, or 1 year after the termination of Jason Player as an employee of ETCS, Jason Player will not directly or indirectly engage in any business that competes with ETCS accounts.  This covenant shall apply to the geographical area that includes the area within a 60 mile radius of Longview.
>
> **2. NON-SOLICITATION COVENANT.**  For a period of 2 years after the effective date of this Agreement, or 1 years after the termination of Jason Player as an employee of ETCS, Jason Player will not directly or indirectly solicit business from, or attempt to sell, license or provide the same or similar products or services as are now provided to, any customer or client of ETCS.  Further, for a period of 2 years after the effective date of this Agreement, or 2 years after the termination of Jason Player, Jason Player will not directly or indirectly solicit, induce or attempt to induce any employee of ETCS to terminate his or her employment with ETCS.  If Jason Player's employment with Buyer is *terminated prior to two years* from the date of this Agreement *for any reason other than a for cause termination*, this Non-Compete Agreement will *no longer be binding*.

CR 22 (emphasis added).  The conditional clauses at the end of the Non-Compete Agreement and the Non-Compete Clause are referred to in this brief as the "Disputed Clause."

The restrictions against competition in the Agreements were plainly conditioned on Player's continued employment with ETCS for more than two years. The term "if" is used to "make performance specifically conditional" in an

12

agreement. *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 109 (Tex. 2010) ("In order to make performance specifically conditional, a term such as if, provided that, on condition that, or some similar phrase of conditional language must normally be included.") (quotations omitted). The Disputed Clause states in relevant part "[i]f Jason Player's employment with [ETCS] is terminated" prior to two years from the date of the Agreements for any reason other than cause, the Agreements are no longer binding. CR 11, 22. Thus, the Disputed Clause creates a condition on Player's covenants not to compete in the Agreements that is satisfied by Player's employment with ETCS for at least two years. Since the condition never occurred, the Disputed Clause is not binding by its own terms.

2. <u>The plain and ordinary meaning of the Disputed Clause gives meaning to the parties' Agreements.</u>

The two-years of employment condition for the covenant not to compete was a meaningful and negotiated part of the Agreements. The parties anticipated—and expressed in the Agreements—that Player and ETCS would have a working relationship after the Agreements. CR 9 ("The Employment Contract was an essential piece of the compensation in the Agreement and Seller would not have agreed to this Agreement without the Employment Contract"). Yet, either party could terminate the employment relationship at will. CR 18. If the parties' relationship was successful for two years, Player agreed not to compete with ETCS for a period of one year after termination of his employment. CR 11, 22. However,

13

ETCS also agreed that if the relationship was not successful, either Player or ETCS could terminate Player's employment with ETCS and Player would be free to return to work for himself. CR 18. Player's work with ETCS for nearly two years, Player's customer list, and Player's non-competition for two years after the date of the Agreements while the parties worked together, is what ETCS bargained for and received under the Agreements.

Player and ETCS's relationship was not successful. Player terminated his relationship with ETCS, as expressly anticipated by the parties and provided for by their Agreements. CR 67. When considering the Agreements as a whole, this interpretation of the parties' Agreements (not what ETCS now wants them to say) is the only reasonable interpretation of the Disputed Clause.

## D. The trial court properly rejected ETCS's request to rewrite the Disputed Clause under the guise of harmonizing the Agreements.

ETCS has buyer's remorse. After Player terminated his employment with ETCS, ETCS decided it no longer liked the deal it made with Player. ETCS now improperly asks the Court to rewrite the parties' Agreements, under the guise of harmonization, in hopes of getting a better deal after benefiting from the parties' Agreements for nearly two years. Tellingly, ETCS previews for the Court that harmonizing a document is "often co-opted by one or both of the litigants to argue

14

that the contract says what they meant it to say." Brief, at 9.[3] ETCS then goes on to do exactly that—arguing the Court should rewrite the parties Agreements so the Agreements will say what ETCS now wants them to say, rather than what ETCS actually negotiated and agreed to in the Agreements. This Court should reject ETCS's request to rewrite the parties' Agreements under the guise of interpretation.

    1.    <u>It is unnecessary to harmonize the Agreements because there are no inconsistent or discordant parts.</u>

ETCS admits that harmonization is only required when there are "inconsistent or discordant" parts of an agreement. Brief, at 9. Yet, ETCS fails to identify any sections or clauses of the Agreements which are allegedly inconsistent or discordant and require harmonization. When ETCS says the "entire agreement as a whole," "entire purpose of the transaction," what ETCS means is its own current subjective desires. *See, e.g.,* Brief, at 4, 8. ETCS knows that rewriting the parties' agreement is impermissible, so it instead invites the Court to do so under the guise of harmonizing the Agreements with ETCS's "business activity." Brief, 9-10. All of these characterizations of Agreements, are only different expressions of ETCS's efforts to use its subjective desires to rewrite the Agreements.

The intent of the parties "as expressed by the agreement" shows that there are no inconsistent or discordant parts of the agreement which requires harmonizing.

---

[3] References to "Brief, at [page number]" refer to the page number of Appellant's Brief in this appeal (filed August 4, 2016).

*FPL Energy*, 426 S.W.3d at 63. The Agreements expressly provide that either Player or ETCS were permitted to terminate Player's employment with ETCS upon written notice. CR 18. Thus, the other portions of the Agreements are consist with the plain and ordinary meaning of the Disputed Clause, that is, termination of Player's employment with ETCS could include termination by either Player or ETCS. The trial court specifically recognized the same in rejecting ETCS's arguments. RR, Vol. 1, 35-36 (court stating "the way 'termination' is used throughout all the agreements tied in, it anticipates termination by either the plaintiff or the defendant").

The Agreements were specifically negotiated to allocate the risk involved in the parties' work together. *El Paso Field Servs.*, 389 S.W.3d at 812 ("Freedom of contract allows parties to . . . allocate risk as they see fit."). Specifically, the Disputed Clause is intended to offset that either ETCS or Player would terminate Player's employment earlier than two years after the Agreements because their working relationship was not successful. The parties' allocation of risk explains ETCS's hypothetical where Player quits immediately after payment from ETCS for the customer list. Brief, at 11. Under the parties' Agreement, ETCS bore some risk that Player would terminate his employment with ETCS immediately after payment for the customer list. CR 11, 18, 22 (Agreements would no longer be binding after termination of Player's employment with ETCS). ETCS balanced against that risk by putting Player at risk of losing $250,000 in monthly payments (CR 9) and

16

$186,000 in salary payments over two years (CR 17). Player also bore risk that his employment would not be suitable with ETCS and he would be forced to give up all of his compensation to return to work for himself. Thus, ETCS's hypothetical actually demonstrates that the parties considered and bargained for the risks that one or the other would not benefit from the transaction as expected and structured their Agreements around those risks.

ETCS's second hypothetical further confirms the parties' attempted to allocate risk as part of their Agreements. ETCS argues that, under the plain and ordinary meaning of the Disputed Clause, ETCS could have terminated Player for cause on the day before the expiration of two years and Player would be prohibited from competing, but if Player voluntarily resigned on the same day he would not be prohibited from competing. Brief, at 16. ETCS is correct. Player bore the risk, that if he created some cause for his termination by ETCS, ETCS would be permitted to terminate him and retain the benefit of the non-compete agreement. ETCS bore the risk that if it did something to encourage Player to resign before two years of employment, he could do so without being bound by the agreement not to compete. Weighing the risks and benefits of the parties' working relationship together after the agreements was the very purpose of the Disputed Clause.

Further, the undisputed facts demonstrate ETCS received the benefit of its bargain with Player. For nearly two years, ETCS benefited from the parties'

Agreements by working with Player and Player's customers. ETCS received Player's customer list. Player worked as ETCS's employee for nearly two years. It was Player who permitted ETCS to access his business operations and strategies, rather than the other way around as suggested by ETCS. *Compare* CR 18 (requiring Player to help improve ETCS's procedures), *with* Brief, at 16 (arguing Player benefited from ETCS's operating procedures and strategies). ETCS also received sizable payments from Player's former customers. CR 55. ETCS claims it made hundreds of thousands of dollars from only some of Player's customers based on its relationship with Player. *See* CR 65 (alleging damages for Player's breach based on loss of customers). ETCS's claim that the entire transaction was rendered meaningless by the trial court's construction is demonstrably false. Brief, at 12.

2. <u>The plain and ordinary meaning of the Disputed Clause does not render Player's promise illusory.</u>

ETCS argues in a single sentence that the conditional nature of the covenant not to compete would render the promise not to compete illusory. Brief, at 11. This argument was waived by ETCS's failing to raise the argument in the court below. *Craig Sessions*, 412 S.W.3d at 743 n.3 (appellant waived argument by failing to raise it with the trial court). ETCS's argument is contrary to law. Conditional promises are enforceable in the employment context, and otherwise. *Smith v. Carter & Burgess, Inc.*, 2005 Tex. App. LEXIS 1140, at *9 (Tex. App.—Fort Worth Feb. 10, 2005, no pet.) (condition did not render employment contract meaningless); *Fletcher*

18

*v. Energy Res. Tech. GOM, Inc.*, 2012 Tex. App. LEXIS 7034, at \*\*8–10 (Tex. App.—Houston [1st Dist.] Aug. 23, 2012, no pet.) (same); *see also* Restatement (Second) of Contracts § 224 (1981) ("A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due."). Second, the only case cited by ETCS in support of its proposition that the clause would be illusory actually supports the opposite conclusion. The case relied on by ETCS, *Cleveland Constr., Inc. v. Levco Constr. Inc.*, pointed out that a conditional clause is not rendered illusory because when the "clause is part of an underlying contract, the rest of the parties' agreement provides the consideration." 359 S.W.3d 843, 853 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd). Since the arbitration clause at issue in *Cleveland Constr.* was part of an underlying agreement which contained mutual obligations, the clause was not illusory. *Id.* at 853–54. The same is true for Player's promise not to compete. The promise not to compete is part of an underlying agreement, the APA, which contains mutual unconditional obligations. CR 9–20. Thus, the promise not to compete is not rendered illusory. *See Cleveland Constr.*, 359 S.W.3d at 853–54.

3.  ETCS's request to harmonize the Agreements is really a request to rewrite the Agreements contrary to Texas law.

As an initial matter, ETCS's interpretation of the Disputed Clause is inconsistent with its own interpretation in the trial court. As shown below, ETCS's

proposal in the trial court included much more than ETCS's proposal on appeal that "termination" means termination by ETCS.

| Agreements | ETCS in Trial Court (emphasis added) | ETCS on Appeal (emphasis added) |
|---|---|---|
| If Jason Player's employment with Buyer is terminated prior to two year[s] from the date of this agreement for any reason other than a for cause termination, this Non-Compete Agreement will no longer be binding. | "in the event of termination *by ETCS* for a reason other than with cause, Player is *released from the non-competition provision* in that event. *Otherwise, he is obligated not to compete for at least two years after the effective date (July 1, 2013) and for at least one year after the end of his separation from employment with ETCS should that separation begin more than one year after July 1, 2013*." | If Jason Player's employment with Buyer is terminated *by ETCS* prior to two years from the date of this agreement for any reason other than a for cause termination, this Non-Compete Agreement will no longer be binding. |

CR 11, 22 (Agreements); CR 82 (ETCS in trial court); Brief, at 13 (ETCS on appeal). ETCS inability to keep its own interpretation consistent is indicative of the unreasonableness of its position(s). ETCS likely changed its position because of multiple problems with its proposed construction as pointed out in the briefing to the trial court. CR 125–26 (ETCS's rewrite of the Disputed Clause so that Player is only released from the non-competition provision, rather than the entire agreement); CR 126 (changing 2 years *or* 1 year to 2 years *and* 1 year of non-competition). In any event, ETCS's newly proposed construction on appeal is still unreasonable for the same reasons it was in the trial court.

20

ETCS's proposed construction on appeal is nothing more than an attempt to rewrite the Disputed Clause by inserting the phrase "by ETCS" after the word termination to limit the condition in the Disputed Clause. Brief, at 13 ("must be interpreted as a protection for Player against termination by ETCS in less than two years from July 1, 2013"). First, this Court should not rewrite the parties' agreements to insert "by ETCS" into the parties' Agreements because it is a provision the parties could have included but did not. *LG Ins. Mgmt. Servs.*, 378 S.W.3d at 638 (courts should not insert provisions the parties could have included). Second, the fact that the phrase "by ETCS" is not in the parties' Agreements demonstrates that it is not what the parties objectively intended under the Agreements. *Hamblin*, 433 S.W.3d at 54 (the court should determine the objective intentions of the parties as expressed in the agreement). Third, ETCS's proposal is inconsistent with other portions of the Agreements that specifically anticipate and expressly state that Player's employment with ETCS could be terminated by Player or ETCS. CR 18 ("Player's employment with ETCS *may be terminated by ETCS* upon 60 days written notice, *and by Jason Player* upon 60 days written notice") (emphasis added). Thus, the parties intended "termination" of Player's employment to mean termination by either party, not just termination by ETCS. The parties could have chosen to specify that termination meant termination "by ETCS" if they had

21

intended something different than "termination" in the parties' employment agreement.

ETCS's addition of the term "by ETCS" is contrary to the plain language of the Agreements. *Contra Heritage Res.*, 939 S.W.2d at 121 (court's interpretation should be based on plain language); *McLane Foodservice*, 736 F.3d at 378 (same). Black's Law Dictionary definition indicates that "termination" of employment means the complete severance of an employer-employee relationship by either the employee or the employer. *See* CR 44. If the parties had intended termination to mean anything other than its plain and ordinary meaning, they could have stated differently by using terms "involuntary termination," "fired," or, as ETCS suggests, "by ETCS" to make clear that termination only meant termination by the employer. The parties did not. Tellingly, ETCS does not even attempt to explain how the plain meaning of termination means only termination by the employer. There is no reasonable basis to add the language ETCS requests into the parties' Agreements.

Case law also indicates ETCS's limitation of termination to termination by the employer is unreasonable. Courts around the country have noted that "termination" does not just refer to termination by the employer. *See, e.g.*, *Willenson v. Miner, Barnhill & Galland, P.C.*, 998 N.E.2d 984, 2011 Ill. App. Unpub. LEXIS 579, at **7–8 (Ill. App. [1st Dist.] April 14, 2011) ("giving 'termination' its plain and ordinary meaning in an employment context, it means an end to employment

22

and could mean a voluntary resignation, an involuntary termination or both"); *Anderson v. Twin City Rapid Transit Co.*, 84 N.W.2d 593, 598 (Minn. 1957) ("quit . . . is defined by the United States Bureau of Labor Statistics as a termination of employment by the worker because of his desire to leave") (internal quotations omitted); *Meckes v. Cina*, 75 A.D.2d 470, 474 (N.Y. App.—4th Div. July 10, 1980) ("termination of employment was defined as a voluntary quitting by the employee or a discharge by the employer") (internal quotations omitted); *Hoffman v. Am. Soc'y for Technion-Israel Inst. of Tech., Inc.*, 2013 U.S. Dist. LEXIS 9921, at *10 (S.D. Cal. Jan. 23, 2013) (resignation constituted termination); *InterPay, Inc. v. Bigham*, 2002 U.S. Dist. LEXIS 16202, at *11 (D. Mass. Aug. 15, 2002) ("[t]he plain meaning of voluntary termination is that the employee has freely chosen to cease employment with the company"). ETCS cites no case law or any other sources in support of its position that termination of employment means termination only by the employer.

4. <u>The use of the passive voice in the Disputed Clause supports the plain and ordinary meaning adopted by the trial court.</u>

For the first time on appeal, ETCS argues that the Disputed Clause is "more consistent with a termination by ETCS of Player than voluntary resignation by Player" because it is written in the passive voice. Brief, at 14. ETCS waived this argument by failing to raise it in the court below. *Craig Sessions*, 412 S.W.3d at 743 n.3. Further, ETCS is grammatically and legally incorrect. The Redbook, a

23

manual on legal style, explains that "the passive voice is appropriate in some places, especially (1) when the emphasis is on the recipient of the action instead of the actor, and (2) *when the actor is unknown or unimportant*." BRYAN A. GARNER, THE REDBOOK: A MANUAL ON LEGAL STYLE 166 (Thompson/West 2006) (2002) (emphasis added). Texas case law is consistent with the Redbook and suggests the use of passive voice shifts focus of the clause onto the action when the action taker is unimportant. *See Walden v. Affiliated Computer Servs.*, 97 S.W.3d 303, 316–17 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (use of passive voice shifted focus to the action, away from the actor). Further, and as explained in detail above, the other portions of Agreements expressly provide that either Player or ETCS may terminate Player's employment with ETCS. CR 18. ETCS's failed attempt to use grammatical rules to justify rewriting the Disputed Clause demonstrates how desperately ETCS is searching for any support in favor of rewriting the Agreements. Contrary to ETCS's unsupported argument, the parties' use of the passive voice in the Disputed Clause demonstrates that the trial court properly adopted the parties' plain and ordinary meaning.

**E.    ETCS's attempt to rewrite the Disputed Clause cannot create ambiguity.**

ETCS's argument that the Disputed Clause is ambiguous is just another recitation of its flawed arguments to rewrite the Disputed Clause. ETCS concedes that for an agreement to be ambiguous it "must be reasonably susceptible to two or

24

more meanings." Brief, at 15 (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229, (Tex. 2003)). However, ETCS does not propose a meaning for the Disputed Clause at all. Instead, ETCS asks the Court to rewrite the parties' Agreements into something substantially different as explained herein. ETCS cannot argue that its alternative agreement would have been reasonable for the parties to make in order to create ambiguity in the agreement that the parties actually made. *See Craig Sessions*, 412 S.W.3d at 744 (evidence outside the contract cannot be used to vary the plain terms of an agreement). The trial court properly found that the Disputed Clause is not ambiguous because it is only subject to one reasonable interpretation based on the plain terms of the Agreements.

## VIII. CONCLUSION

The trial court properly found that the plain language of the Disputed Clause in the Agreements is clear and unambiguous. If Player's employment with ETCS is terminated for any reason other than cause prior to two years from the date of the Agreements, the Non-Compete Agreement and Non-Compete Clause are no longer binding on Player. ETCS wants more than what it bargained for under the Agreement. It asks the Court to rewrite the parties' Agreements so that ETCS can prohibit Player from competing as punishment for voluntarily resigning his employment with ETCS. This Court should reject ETCS's request to write in new terms to the Disputed Clause under the guise of interpretation and affirm the trial

25

court's Final Judgment consistent with the objective intent of the parties, the plain language of the Agreements, and Texas law.

## IX.   PRAYER

Player respectfully requests that the Court reject ETCS's request to rewrite the Agreements, overrule ETCS's issues on appeal, and affirm the trial court's judgment.  Player further requests all relief in law and equity to which this Court determines he is entitled.

Respectfully submitted,

Eric M. Albritton
Texas State Bar No. 00790215
ema@emafirm.com
Shawn A. Latchford
Texas State Bar No. 24066603
sal@emafirm.com
**ALBRITTON LAW FIRM**
P.O. Box 2649
Longview, Texas 75606
Telephone:  (903) 757-8449
Facsimile:  (903) 758-7397

*Counsel for Appellee*
*Jason Player*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the above and foregoing Brief of Appellee is 6,407 words in length in 14pt Times New Roman, a proportional font, and that all footnotes are in 14pt of the same font.

_____
Eric M. Albritton

## CERTIFICATE OF SERVICE

Pursuant to Tex. R. App. P. 9.5, I certify that on October 6, 2016, a copy of this motion was served on Appellant's counsel by e-File system and email.

_____
Eric M. Albritton