

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00010-CV

_____

CRAIG SESSIONS, M.D., P.A. AND CRAIG SESSIONS, M.D., Appellant

V.

TH HEALTHCARE, LTD., D/B/A NACOGDOCHES MEDICAL CENTER, Appellee

On Appeal from the 145th District Court
Nacogdoches County, Texas
Trial Court No. C1127428

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

O P I N I O N

As a part of its physician recruitment program, TH Healthcare, Ltd., doing business as Nacogdoches Medical Center (Hospital), entered into a contract with an orthopedic specialist, Craig Sessions, M.D., and his business entity, Craig Sessions, M.D., P.A. (to which reference is made collectively as Sessions) to encourage him to move his medical practice to Nacogdoches.[1] The contract was a relocation agreement, wherein Sessions was to move his medical practice from Palestine to the Hospital's service area, a geographical area defined as that encompassed within thirteen United States Postal Service ZIP codes in and around Nacogdoches, Texas. As a principal term of the contract, the Hospital guaranteed that Sessions would collect at least $725,000.00 during the first year of the contract and, if Sessions' "collections" were less than that amount, the Hospital would pay Sessions the difference between his actual "collections" and the $725,000.00 guaranteed minimum. Conversely, should Sessions collect (when the amount paid by the Hospital is involved) in excess of $725,000.00 during that first year of the contract, he was obligated to pay the excess to the Hospital in the form of a reconciliation payment.

As things developed, the billing estimates upon which the contract was based must have been conservative because the contractually-mandated "collections" reconciliation audit (which dealt with Sessions' "collections" during the first year of the contract) determined that Sessions had collected $267,418.10 in excess of the agreed-upon $725,000.00. After that determination was made, the Hospital made demand on Sessions for the $267,418.10 excess. Sessions, having

---

[1] Originally appealed to the Twelfth Court of Appeals in Tyler, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). As a transfer case, we are required to apply the precedent of the Tyler Court of Appeals to the extent it may differ from our precedent. *See* TEX. R. APP. P. 41.3.

2

interpreted the contract differently than the Hospital, refused to pay. The Hospital filed suit for breach of contract, and Sessions filed counterclaims for the same.

After the suit was filed and discovery had proceeded, the Hospital filed a motion for summary judgment, and Sessions responded by filing a motion for partial summary judgment. In his motion for partial summary judgment, Sessions sought a declaration that: (a) the term "collections," as used in the contract, was limited to "collections" for services rendered within the Hospital's service area, (b) in the alternative, that the definition of "collections" was ambiguous as a matter of law, and/or (c) the contract was now a net income guarantee contract rather than a "collections" guarantee contract. The summary judgment motion of the Hospital sought findings that Sessions had breached the contract, and that he owed certain sums to the Hospital, and sought recovery of those sums plus attorney's fees and interest. The trial court denied Sessions' motion for partial summary judgment and granted summary judgment in favor of the Hospital, awarding it $419,504.63 in damages, interest, and attorney's fees.

We affirm the trial court's denial of Sessions' motion for summary judgment. We reverse and remand the trial court's award of summary judgment to the Hospital.

I.      **Background Facts**

The agreement to which reference is made above was entered into between the Hospital and Sessions on September 1, 2008.

After the reconciliation audit revealed that Sessions' income exceeded the guaranteed amount by $267,418.10, Sessions admitted to having received a copy of the reconciliation report dated June 17, 2010. He refused to pay the Hospital the excess "collections," maintaining that

3

the amount was not owed. The Hospital notified Sessions on March 1, 2011, that it considered Sessions in breach of the agreement and stated that he had thirty days to cure the breach without penalty. Sessions refused to pay any amount, and, on May 1, 2011, the Hospital terminated the agreement pursuant to Section 3(b) of the agreement.

The Hospital brought its suit against Sessions June 24, 2011, alleging a breach of contract. It was undisputed that virtually all of the $267,418.10 excess over the contractually-prescribed $725,000.00 was collected by Sessions from his having continued a part-time orthopedic medicine practice in Palestine, where he had previously been practicing, rather than from work within the Hospital's service area.

The threshold conflict between the parties in the lawsuit was the definition of the word "collections" as used in the agreement. The Hospital maintained that the agreement's definition of "collections" included any and all funds collected by Sessions for work performed during the term of the agreement (irrespective of the place such work was performed), but Sessions argued that the only "collections" applicable to the agreement were those he received from work performed inside the Hospital's service area—not those he collected as the result of winding down his practice in Palestine.

After denying Sessions' motion for partial summary judgment and granting the Hospital's motion for summary judgment in full, the trial court awarded judgment against Sessions for $419,504.63 (this being comprised of the $267,418.10 excess over the guaranteed

4

income, principal unforgiven installments of $75,713.97,[2] $34,363.56 in prejudgment interest from December 13, 2010, through September 20, 2012, and $42,009.00 in attorney's fees). The trial court also awarded conditional attorney's fee awards of $25,000.00 for a successful appeal to the court of appeals and an additional $20,000.00 for a successful appeal to the Supreme Court of Texas.

## II.       Standard of Review

A traditional motion for summary judgment is granted only when the movant establishes that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). An appellate court reviews the grant or denial of a motion for summary judgment de novo and, in doing so, is to consider the summary judgment evidence in the light most favorable to the nonmovant. *Id.* Where (as here) each party files a motion for partial or full summary judgment and the court grants one while overruling the other, the appellate court has jurisdiction to review both the grant and the denial. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). Thus, in this case, we are to review the summary judgment evidence presented by each party, determine all questions presented, and render judgment as the trial court should have rendered. *Id.*; *Comm'rs Court of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997); *Nash v. Beckett*, 365 S.W.3d 131, 136 (Tex. App.—Texarkana 2012, pet. denied). If we determine that a fact issue precludes summary judgment for either party, we remand the

---

[2]This uncontested on appeal contractual damage amount represents certain principal amounts and other additional monetary benefits owing under the contract that are unrelated to the excess "collections" amount.

cause for trial. *See Univ. of Tex. Health Sci. Ctr. at Houston v. Big Train Carpet of El Campo, Inc.*, 739 S.W.2d 792, 792 (Tex. 1987) (per curiam).

## III.     Analysis

### A.     Does the Term "Collections" as Used in the Agreement Include Fees Paid for Medical Services Rendered by Sessions Outside the Hospital's Defined Service Area or is the Term Ambiguous?

Sessions contends that the trial court erred in its summary judgment rulings because the term "collections," as used in the agreement, does not include "collections" from services rendered outside the Hospital's service area; in the alternative, Sessions claims that the term is ambiguous.

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the terms and language of the instrument. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). When discerning the contracting parties' intent, we give contract terms their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning. *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009).

The construction of an unambiguous contract is a question of law for the court, a question which we review de novo. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). Where a contract is unambiguous, the language of the contract alone expresses the parties' intent, and it must be enforced as written. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984); *Yancey v. Floyd W. & Co.*, 755 S.W.2d 914, 918 (Tex. App.—Fort Worth 1988, writ denied). "A contract is not ambiguous simply because the parties disagree over its meaning." *Apache*

6

*Corp.*, 294 S.W.3d at 168. Rather, a contract is ambiguous only when "its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

"Collections," as defined in Exhibit C-1 of the contract or agreement, includes:

all monthly fees and charges resulting and collected from items or services furnished by, or under the direction of, Physician (including, without limitation, a reasonable allocation for services provided under capitated payment arrangements), regardless of where or to whom such services are provided, and shall also include compensation for all professional and administrative service arrangements for the month.

Sessions provides three reasons he contends that the word "collections" does not include revenue collected from services rendered outside the Hospital's service area: (a) the Hospital is bound by his interpretation because it knew prior to entry of the parties into the contract that Sessions interpreted the term "collections" to exclude revenue from any wind down practice he conducted in Palestine, (b) Sessions' interpretation is necessary when the term is viewed in light of the whole document, and (c) the parties' course of performance, coupled with the surrounding circumstances, established Sessions' interpretation of that word as the correct one.

### 1. Is the Hospital Bound by Sessions' Previously-Disclosed Interpretation?

Sessions contends that the Hospital is bound by his interpretation because a few months prior to signing the agreement, he had spoken with Gary Stokes, the Hospital's Chief Executive Officer (CEO), about his desire to remain available to take on patients in Palestine, and Stokes knew that it was Sessions' understanding that the Hospital would not receive revenue from those patients. The Hospital argues that all prior oral communications are superseded by the parol

7

evidence rule and the contract's merger clause, which states, in relevant part, "This [a]greement contains the entire understanding of the parties . . . and supersedes all prior agreements, oral or written, and all other communications between the parties relating to such subject matter."[3]

The general rule is that every person who has the capacity to enter into a contract is held to know what words were used in the contract, to know their meaning, and to understand their legal effect. *Amouri v. Sw. Toyota, Inc.*, 20 S.W.3d 165, 169 n.2 (Tex. App.—Texarkana 2000, pet. denied). The consequence of this rule is that a party to a contract may not successfully claim that he believed the provisions of the contract were different from those plainly set out in the agreement or that he did not understand the meaning of the language used. *Id*. at 169; *Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d 835, 846 (Tex. App.—Houston [14th Dist.] 1996, writ denied). The parol evidence rule provides that extrinsic evidence will not be received if its effect is to vary, add to, or contradict the terms of a written contract that is complete in itself and unambiguous. *Amouri*, 20 S.W.3d at 169 n.2; *Guisinger v. Hughes*, 363 S.W.2d 861, 865 (Tex. Civ. App.—Dallas 1962, writ ref'd n.r.e.). The intent of the parties must ordinarily be

---

[3]Issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal. *Avmanco, Inc. v. City of Grand Prairie*, 835 S.W.2d 160, 166 (Tex. App.—Fort Worth 1992, writ dism'd as moot). Summary judgment may not be affirmed on a ground not presented to the trial court. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010). Here, Sessions failed to raise this argument to the trial court as grounds or support for his motion for partial summary judgment, and, therefore, he may not raise it in support thereof for the first time on appeal. *See* TEX. R. CIV. P. 166a; *Deutsche Bank Nat'l Trust Co. v. Stockdick Land Co.*, 367 S.W.3d 308, 318 n.17 (Tex. App.—Houston [14th Dist.] 2012, pet. filed) (citing *Bickers v. State*, 646 S.W.2d 668, 670 (Tex. App.—Dallas 1983, no writ). However, we address this argument insofar as it attacks the legal sufficiency of the Hospital's motion for summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) (even when nonmovant fails to answer, legal sufficiency may be raised for first time on appeal).

8

ascertained from the contract alone.[4]  *Paxton v. Spencer*, 503 S.W.2d 637, 642–43 (Tex. Civ. App.—Corpus Christi 1973, no writ).

Sessions contends that the Hospital is bound by his interpretation because the Hospital knew his interpretation of the scope of "collections" and then allowed him to perform part of the contract before asserting a different meaning of the term.  Sessions based this premise upon the Restatement (Second) of Contracts:

> (2)     Where the parties have attached different meanings to a promise or agreement or a term thereof, it is interpreted in accordance with the meaning attached by one of them if at the time the agreement was made
> (a)      that party did not know of any different meaning attached by the other, and the other knew the meaning attached by the first party; or
> (b)      that party had no reason to know of any different meaning attached by the other, and the other had reason to know the meaning attached by the first party.

RESTATEMENT (SECOND) OF CONTRACTS § 201 (1981).  In support of this premise, Sessions cites, among others, *United States v. Stuart*, 489 U.S. 353, 377 n.7 (1989); *McBride v. Ponder*, 242 S.W.2d 253, 256 (Tex. Civ. App.—San Antonio 1951, writ ref'd n.r.e.); *Dublin Elec. & Gas Co. v. Thompson*, 166 S.W. 113 (Tex. Civ. App.—Fort Worth 1914, no writ); *accord Centron DPL Co. v. Tilden Fin. Corp.*, 965 F.2d 673, 675 (8th Cir. 1992) ("It is well settled, however, that where only one party knows or has reason to know of the different meaning attached by the other, that party is bound by the other party's meaning.").  When the contract applies the phrase "regardless of where or to whom such services are provided" within the definition of "collections," it provides for the lack of physical boundaries.  Sessions' argument fails, and the cases he cites are distinguishable because, here, at the time the agreement was made, Sessions

---

[4]We note that Sessions failed to plead fraud or mistake.

9

knew or should have known of the Hospital's "different" interpretation of the term "collections" as it was plainly spelled out in the contract he signed. *See Amouri*, 20 S.W.3d at 169; *see* RESTATEMENT (SECOND) OF CONTRACTS § 201(2)(a), (b).

As the term is defined in the contract, "collections" is unambiguous. If a written contract's terms are unambiguous, then parol evidence is inadmissible to vary, add to, or contradict its terms, especially when the contract contains a merger clause. *Stauffer v. Henderson*, 801 S.W.2d 858, 863 (Tex. 1990). Accordingly, Sessions' prior oral statements or understandings of the contract terms are not competent evidence to vary the plain terms of the contract.

## 2. Is the Trial Court's Interpretation of "Collections" Correct in Light of the Whole Document?

Sessions argues that when the term "collections" is harmonized "under a whole-document view, the [a]greement requires [his] interpretation" that the scope of "collections" was limited to the Hospital's service area.

In interpreting a contract, courts must examine the entire agreement and give effect to each provision so that none is rendered meaningless. *Tawes*, 340 S.W.3d at 425. When performing this review, no single provision will be given controlling effect; instead, all of the provisions must be considered in light of the whole agreement. *Id.*

In support of his argument, Sessions points out that the Hospital's "service area" is a phrase that is referenced throughout the agreement, specifically in the recitals and physician's obligations as well as in the provisions relating to relocation expenses, malpractice insurance, marketing support, consulting fees, and contract termination. He posits that the repetitive use of

10

the phrase reflects a contract focused on and limited to the service area, but no such global limitation appears in the agreement or the definition of "collections."

He urges that the phrase "regardless of where or to whom such services are provided" should be considered as addressing only the laws regulating physician practices and federal anti-kickback laws regulating what a hospital can and cannot do to entice a physician to its facility or its service area. Limiting that phrase to that application strains credulity, and no such limitation is found in the contract.

Sessions also contends that the Hospital's interpretation of "collections" contradicts "other stated contract terms, including the Agreement's payment terms." Under the payment terms portion of the agreement, during the first month of the guarantee period, the Hospital is required to advance a full monthly guarantee amount at the outset, and Sessions maintains that "[t]his strongly implies that the guaranteed payments were intended to ensure a threshold amount of "collections" for the Nacogdoches-area practice, which would have little, if any, receipts in its first month." Here, due to the reconciliation process outlined in the agreement, the payment terms do not directly conflict with the clear language in the "collections" definition.

After examining the definition of "collections" in light of the entire document, we are unable to determine as a matter of law that Sessions' urged interpretation is correct. Even though the phrase "service area" frequently appears in the agreement, no service area limitation is imposed on the definition of "collections." The fact that the term "service area" is frequently found elsewhere in the contract but absent in the portion of the contract defining "collections" would seem to show an intent to exclude that term from that portion of the contract. A literal

11

interpretation of "collections" does not conflict with any other provision or render any other provision meaningless.

### 3. Does the Parties' Course of Performance Define "Collections"?

Sessions also alleges that the parties' course of conduct or dealing during the term of the contract shows that the term "collections" was intended to exclude revenue collected by him from outside the Hospital's service area. Evidence of trade usage and course of conduct is admissible to explain, supplement, or qualify a term or an agreement, but it may not be used to contradict an express term. *Carson Energy, Inc. v. Riverway Bank*, 100 S.W.3d 591 (Tex. App.—Texarkana 2003, pet. denied); *Transcon. Gas Pipeline Corp. v. Texaco, Inc.*, 35 S.W.3d 658, 670 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). Here, the term "collections" and its definition are quite express and very clear; therefore, course of performance may not be used to contradict them.

After examining the entire agreement, we determine that the term "collections" and its definition in the agreement are clear and unambiguous, making it necessary to enforce the term as it was written. The trial court impliedly ruled that "collections" includes "all monthly fees and charges . . . from items or services furnished by, or under the direction of, [Sessions], . . . regardless of where or to whom such services are provided . . . " and that the term is not limited to fees and charges for services rendered within the Hospital's service area.[5] We believe this to be a correct application of the law to the facts. In the face of an express and patently unambiguous term, neither the parties' subsequent course of conduct nor Sessions' prior oral

---

[5]This ruling was required in order for the trial court to grant the Hospital's motion for summary judgment and award the damage amounts it awarded.

communications may be used to add to, vary, or contradict the plain terms of the written agreement. We overrule this point of error.

**B.      Was the Contract Amended from a "Collections" Guarantee to a Net Income Guarantee?**

Sessions also argues that the trial court's summary judgment rulings were in error because the contract was amended from a "collections" guarantee to a net income guarantee when Sessions purchased membership and ownership units in the Surgery Center of Nacogdoches. There is no dispute that Sessions purchased membership and ownership units in the Surgery Center. The parties disputed what the purchase meant under the contract.

In pertinent part, the contract reads:

> If during the Guarantee Period (as defined in Exhibit B), Physician subsequently (i) contracts with an existing medical practice ("Existing Practice") for management services, office space, or other items or services, or (ii) joins an Existing Practice as an independent contractor, employee, partner or member (any event in (i) or (ii) shall be a "Change In Status"), then Physician shall cause the Existing Practice to execute an amendment to this Agreement to convert it from a Collections Guarantee to a Net Income Guarantee and to limit the expenses used in calculating Net Income to the actual additional incremental expenses incurred by the Existing Practice in providing the services to Physician. Notwithstanding the foregoing, if Physician or Existing Practice fails to execute such amendment, then Hospital shall have no obligation to make any further Guarantee Payments under this Agreement. In addition, from the effective date of Physician's Change In Status, the Guaranteed Monthly Amount shall be the lesser of the salary used in calculating the Collection Guarantee Amount or Physician's actual compensation payable by Existing Practice. Further, the Guarantee Amount shall be reduced to be the sum of the actual Guaranteed Monthly Amount and the Monthly Expense Cap (to be defined in the amendment) for each month of the Guarantee Period.
>
> b.      The terms and provisions of this Section 9 shall supersede any conflicting or inconsistent terms and provisions in the Agreement, including all exhibits or other attachments thereto and all documents incorporated therein by reference.

Whether the contract is a "collections" guarantee or a net income guarantee is material because it determines the method by which damages would be calculated in the event of breach.

In an affidavit incorporated in his motion for summary judgment, Sessions stated that in September 2008, he purchased two units of ownership in an entity called "The Nacogdoches Medical Center Surgery Center, d/b/a The Surgery Center of Nacogdoches" for $12,500.00 per share and that in October 2009, he purchased a third ownership unit in the same entity for an additional $12,500.00. With the purchase of units in this entity, Sessions "obtained privileges to operate and perform medical services at the Surgery Center and did in fact perform operations and other medical services at the Surgery Center during the first 12 months of the Relocation Agreement . . . ." The Hospital does not dispute these allegations.

In an affidavit given in opposition to Sessions' motion for partial summary judgment, Rhonda Rogers, the Hospital's Chief Financial Officer, disputes that the contract guarantee morphed from one based on "collections" to one controlled by net income. She stated that the Surgery Center is a Texas limited partnership (LP) and is an affiliate of the Hospital "in the sense that it is controlled by or under common control with the Hospital." Her affidavit went on to relate that the Surgery Center does not employ any physicians, and it pays no compensation to the surgeons who practice there; however, "[depending on the LP's results of operations, profits of the LP may be paid to the physician limited partners . . . ."

Here, there is no dispute that Sessions purchased membership and ownership interests in the Surgery Center. However, the term "existing practice" is not defined in the contract, and the summary judgment evidence fails to affirmatively establish whether an ownership interest in the

14

Surgery Center equates to an "existing practice" under the contract. We find that summary judgment on this issue was inappropriate because the evidence is insufficient to prove as a matter of law whether the entity in which Sessions bought membership and ownership interests was, indeed, an "existing medical practice" as that term is used in the contract. Accordingly, we overrule this point of error, affirm the trial court's denial of Sessions' motion for partial summary judgment, reverse the trial court's order granting summary judgment to the Hospital, and remand the case for further proceedings.

### C. Did Sessions Dispute the Reconciliation Report in Writing?

Neither party claims that the contract is unenforceable, the parties concur that the reconciliation report alleges that Sessions owes the Hospital $267,418.10, and they agree that Sessions has paid no part of that amount, which was demanded by the Hospital. A primary area of dispute between the parties regards the issue of whether Sessions did breach the contract and, if so, when the breach occurred. In challenging the trial court's summary judgment in favor of the Hospital, Sessions argues that the summary judgment was in error because there is a fact issue as to whether Sessions notified the Hospital in writing of any discrepancies in the reconciliation report.

In pertinent part, the contract reads:

*Not later than fifteen (15) days following receipt by Physician of the Reconciliation Report (the "Review Period"), Physician shall notify Hospital in writing of any discrepancies*, providing sufficient detail to permit the parties to fully evaluate the matters at issue. The absence of written notice of any discrepancies by Physician within the Review Period shall be considered an acceptance of the Reconciliation Report as written. Notice of discrepancy shall not relieve Physician of the obligation to pay any undisputed amount according to the terms of Section C-6.

15

> If, at the conclusion of the Post-Guarantee Period, the Total Income exceeds the Guarantee Amount, then Physician shall repay Hospital the excess funds up to the net Guarantee Payments made by Hospital. *Any such repayment of excess funds (the "Reconciliation Payment") shall be made within one hundred eighty (180) days following the date that the Reconciliation Report became final except that any portion of the Reconciliation Payment related to disputed items shall be due within one hundred eighty (180) days following the date that the dispute is resolved.*

(Emphasis added.)

The Hospital's summary judgment evidence fails to affirmatively establish that it received no written notice of dispute from Sessions. Instead, in its summary judgment proof regarding this issue, the Hospital relies entirely on the depositions of Sessions and his wife.[6] During his deposition, Sessions testified that he had orally notified the Hospital's CEO, Stokes, that he disputed the findings of the reconciliation report, but that he did not remember when he did so or whether he had given written notice to the Hospital that he disputed the finding. In her deposition, Sessions' wife was asked twice about whether Sessions had given the Hospital written notice of discrepancies in the reconciliation report within fifteen days of receiving it. In response to the first time the question was posed, she responded, "I don't know that he did in writing . . . [b]ut in writing, I'm not -- I just do not remember on that, so . . . ." Only a short while later during the same deposition, she was asked almost the same question, to which she responded, "I'm sorry. No, I don't --" (here, the questioner apparently spoke at the same time she was responding) "believe he did, no."

---

[6]In Sessions' answers to requests for admissions propounded by the Hospital, Sessions denied that he failed to notify the Hospital in writing of a dispute.

The issue of whether a written disputation was sent by Sessions is material, because under the contract, the existence of a written dispute by him can impact the final date any repayment of an amount set out in the reconciliation report would be due. The contract itself prescribed that Sessions was obligated to make repayment within 180 days "following the date that the Reconciliation Report became final." The finality of the reconciliation report hinged, to some degree, on whether Sessions responded with a written disputation of its conclusion, something he was allowed to do within fifteen days after receipt of the reconciliation report. If he filed a written disputation, then he was obligated to pay within 180 days "following the date that the dispute is resolved." The contract states that if no written notice of discrepancies is made within the fifteen-day review period, then the reconciliation report is deemed accepted, but the contract is silent as to whether that acceptance becomes final (thereby triggering the start of the 180-day period) on the date the reconciliation report was mailed, on the day Sessions received the report, or on the expiration of the review period. The contract is similarly silent as to the means by which resolution of any such dispute was to be accomplished or as to any schedule for achieving that resolution.

Here, although Sessions testified that he did not remember whether he filed a written dispute and Sessions' wife indicated that she did not believe such a written dispute was made, the Hospital failed to affirmatively establish that no written dispute was ever sent by Sessions or that it never received one. Therefore, we sustain this point of error, because the Hospital failed to prove as a matter of law that Sessions breached the agreement and (if he did, indeed, breach the agreement) when that breach occurred.

17

For the reasons stated herein, we affirm the trial court's denial of Sessions' motion for partial summary judgment, reverse the trial court's grant of the Hospital's motion for summary judgment, and remand to the trial court for proceedings consistent with this opinion.


Bailey C. Moseley
Justice

Date Submitted:     July 31, 2013
Date Decided:       August 28, 2013