

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00035-CV

_____

EAST TEXAS COPY SYSTEMS, INC., Appellant

V.

JASON PLAYER, Appellee

On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 2015-1271-CCL2

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

# OPINION

Jason Player sold his business operation to East Texas Copy Systems, Inc. (Copy Systems), and in the process of doing so, entered into an asset purchase agreement (APA) which contained a prohibition against him engaging in a competing business and a separate non-compete agreement (NCA).[1]  Pursuant to another part of the APA, Player was hired as Copy System's information technology (IT) manager and an employment agreement, which fleshed out that aspect of their agreement, was entered.  Player resigned his position with Copy Systems effective June 30, 2015, and immediately resumed business—this time in competition with it.

When Copy Systems objected to Player's activities, Player filed suit, asking the trial court to declare the NCA, and a non-compete clause in the APA previously executed by the parties to no longer bar him from competing.  Copy Systems filed a counterclaim, asking the trial court to enforce its interpretation of their non-competition agreement and to award it damages for breach of contract.  Player and Copy Systems each filed motions for summary judgment, and after a hearing on the motions, the trial court granted Player's motion and denied the motion filed by Copy Systems.  On appeal, Copy Systems challenges the trial court's interpretation of the parties' non-competition agreement as expressed in the NCA and APA.  We find no error by the trial court and affirm its judgment.

---

[1]The NCA and the non-compete clause in the APA are collectively referred to as the "non-competition agreement."

## I.    Background

The APA contained a non-compete clause as follows:

**Non-Compete**:  See Non-Compete Agreement for full details.
Upon finalizing this transaction, the Seller will not directly or indirectly engage in any business competitive with the type of business Jason Player is engaged in prior to this Agreement other than his employment with Buyer for a period of two years. This covenant shall apply to the geographical area that includes the area within a 60 miles-mile [sic] radius of Longview, Texas.  Directly or indirectly engaging in any competitive business includes, but is not limited to:  (i) engaging in a business as owner, partner, or agent, (ii) becoming an employee of any third party that is engaged in such business, (iii) becoming interested directly or indirectly in any such business, or (iv) soliciting any customer or current Executive or Employee of Jason Player for the benefit of a third party that is engaged in such business.  East Texas Copy Systems agrees that this non-compete provision will not adversely affect East Texas Copy Systems' livelihood.  *If Jason Player's employment with Buyer is terminated prior to two year* [sic] *from the date of this Agreement for any reason other than a for cause termination*, *this Non-Compete clause will no longer be binding.*

(Emphasis added).  Section 8 of the employment contract provided:

**8.    TERM/TERMINATION.** Jason Player's employment under this Contract shall be for four years, beginning on July 01, 2013.  This Contract may be terminated by [Copy Systems] upon 60 days written notice, and by Jason Player upon 60 days written notice.  If Jason Player is in violation of this Contract, [Copy Systems] may terminate employment without notice and with compensation to Jason Player only to the date of such termination.  The compensation paid under this Contract shall be Jason Player's exclusive remedy.

The NCA provided, in pertinent part, that:

**1.    NONCOMPETE COVENANT.** For a period of 2 years after the effective date of this Agreement, or 1 year after the termination of Jason Player as an employee of [Copy Systems], Jason Player will not directly or indirectly engage in any business that competes with [Copy Systems'] accounts.  This covenant shall apply to the geographical area that includes the area within a 60 mile radius of Longview.

**2.    NON-SOLICITATION COVENANT.** For a period of 2 years after the effective date of this Agreement, or 1 years [sic] after the termination of Jason

3

Player as an employee of [Copy Systems], Jason Player will not directly or indirectly solicit business from, or attempt to sell, license or provide the same or similar products or services as are now provided to, any customer or client of [Copy Systems]. Further, for a period of 2 years after the effective date of this Agreement, or 2 years after the termination of Jason Player, Jason Player will not directly or indirectly solicit, induce or attempt to induce any employee of [Copy Systems] to terminate his or her employment with [Copy Systems]. *If Jason Player's employment with Buyer is terminated prior to two years from the date of this Agreement for any reason other than a for cause termination*, *this Non-Compete Agreement will no longer be binding.*

3.      **PAYMENT.** [Copy Systems] will pay compensation to Jason Player for the covenant not to compete the amount of $50,000.00. This compensation shall be payable in a lump sum on July 1, 2013.

(Emphasis added). On April 29, 2015, Player gave Copy Systems written notice that he was terminating his employment with Copy Systems no later than June 30, 2015. In his letter of resignation, Player also stated his position that under the terms of the NCA and APA, the non-competition agreement would not be binding on him and that after his resignation was effective, he would be free to engage in an IT-related business once again. In accord with the written notice, Player voluntarily terminated his employment with Copy Systems on June 30, 2015.

On July 8, 2015, Copy Systems, through its attorney, sent Player a letter wherein it demanded that he cease from engaging in any activities that are competitive with Copy Systems within a sixty-mile radius of the City of Longview for a period of one year from the date of his termination of employment. This conflict precipitated the filing of this lawsuit wherein the opposing parties each filed competing motions for summary judgment. The trial court granted Player's motion, denied Copy Systems' motion, and entered a final judgment declaring that the NCA and the non-compete clause in the APA no longer bound Player. The judgment went on to

dismiss all of Copy Systems' claims against Player and awarded Player his requested attorney fees and costs of court.

On appeal, Copy Systems challenges the trial court's grant of Player's motion for summary judgment, arguing that the trial court misinterpreted the non-compete clauses of the APA and the NCA. Copy Systems argues that a proper interpretation of the parties' agreement shows that Player is still bound by the parties' non-competition agreement. In the alternative, Copy Systems argues that the NCA and APA are ambiguous, precluding the entry of summary judgment.

## II.    Standard of Review

A traditional motion for summary judgment may only be granted when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Rhine v. Priority One Ins. Co.*, 411 S.W.3d 651, 657 (Tex. App.—Texarkana 2013, no pet.). We review the grant of a motion for summary judgment de novo "to determine whether a party's right to prevail is established as a matter of law." *Lamar Corp. v. City of Longview*, 270 S.W.3d 609, 613 (Tex. App.—Texarkana 2008, no pet.); *see Nash v. Beckett*, 365 S.W.3d 131, 136 (Tex. App.—Texarkana 2012, pet. denied) (citing *Mann*, 289 S.W.3d at 848). In our review of the grant of a traditional summary judgment, we take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Limestone Prods. Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002) (per curiam); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Rhine*, 411 S.W.3d at 657. If both parties move for summary judgment, and one is granted and the other denied, "we review the summary

judgment evidence presented by both sides and determine all questions presented . . . [and] we render judgment as the trial court should have rendered." *Mann*, 289 S.W.3d at 848 (citing *Comm'rs Court of Titus Cty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)).

In this case, the facts are not in dispute. Rather, the only issue is whether the trial court erred in its interpretation of the parties' non-competition agreement. In construing a written agreement, our primary concern is to ascertain the intentions of the parties as expressed in the instrument. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005); *Craig Sessions, M.D., P.A. v. TH Healthcare, Ltd.*, 412 S.W.3d 738, 742 (Tex. App.—Texarkana 2013, no pet.). Contract terms are given their plain and ordinary meaning unless the instrument indicates a different meaning is intended by the parties. *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009); *Craig Sessions, M.D., P.A.*, 412 S.W.3d at 742. "Generally the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement." *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968). Therefore, we "examine the entire agreement and give effect to each provision so that none is rendered meaningless." *Craig Sessions, M.D., P.A.*, 412 S.W.3d at 745 (citing *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)). Where, as here, there are multiple writings that are part of the same transaction, we consider the writings together. *City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex. 2005).

If the agreement is unambiguous, its construction is a question of law, which we review de novo. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). "Where a contract is unambiguous, the language of the contract alone expresses the parties' intent, and it must be enforced as written."

6

*Craig Sessions, M.D., P.A.*, 412 S.W.3d at 742–43 (citing *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984)).  Further, "[a] contract is not ambiguous simply because the parties disagree over its meaning."  *Id.* at 743 (quoting *Apache Corp.*, 294 S.W.3d at 168).  Rather, only when "its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation" is a contract found to be ambiguous.  *Id.* (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)).

## III.    Analysis

The parties agree that the APA (with its attached employment contract) and the NCA are all part of one transaction[2] and that they should be interpreted and harmonized together, if possible.[3]  Both parties focus on the proper interpretation of one, almost identical, clause which is contained in both the non-compete clause in the APA, and the NCA.  In the NCA, the clause provides, "[i]f . . . Player's employment with [Copy Systems] is terminated prior to two years from the date of this Agreement for any reason other than a for cause termination, this non-compete Agreement will no longer be binding" (the Disputed Clause).  This is a condition subsequent clause.  Under a condition subsequent clause, the fulfillment of a condition excuses performance of an otherwise binding agreement.  *Litton v. Hanley*, 823 S.W.2d 428, 430 (Tex. App.—Houston [1st Dist.] 1992, no writ); *Rincones v. Windberg*, 705 S.W.2d 846, 847 (Tex. App.—Austin 1986, no writ).  The Disputed Clause provides that the fulfillment of the condition (here, Player's

---

[2]The APA, employment contract, and NCA are collectively referred to as "the parties' agreement."

[3]"A noncompetition agreement must be supported by consideration to be enforceable."  *Lazer Spot, Inc. v. Hiring Partners, Inc.*, 387 S.W.3d 40, 46 (Tex. App.—Texarkana 2012, pet. denied).  This truism is likely the reason for having set out the NCA as a separate document from the APA.

employment being terminated prior to July 1, 2015, for any reason other than a for cause termination) would render the non-competition agreement no longer binding. In other words, Player would be excused from the performance of any duties imposed on him by either the non-compete clause of the APA or the NCA if his employment were terminated without cause prior to the stated time. The parties do not dispute that Player's employment was terminated prior to July 1, 2015, without cause. Rather, Copy Systems argues that the Disputed Clause should be interpreted to only be effective if Copy Systems terminated Player's employment.

We agree with the trial court that under the plain and ordinary meaning of the terms used in the parties' agreement, the Disputed Clause was effective if either party terminated Player's employment. Under the employment contract, both Copy Systems and Player were given the right to terminate Players' employment by giving sixty days written notice to the other party. Thus, under the parties' agreement, either Copy Systems or Player could terminate his employment. Significantly, the Disputed Clause simply says that the triggering event is that "[i]f [Player's] employment with Buyer is terminated (without cause)," without identifying which party terminates the employment relationship. Thus, the emphasis of the Disputed Clause is on the termination of Player's employment, not which party initiates the termination. Under the parties' agreement, either party could terminate the employment relationship. Therefore, we presume that the parties, by not limiting which party initiates the termination, intended that either party could initiate the termination. Since Player's employment was terminated prior to July 1, 2015, without cause, the non-compete clauses under the APA and the NCA were no longer binding.

8

Copy Systems argues that in the context of this transaction, the Disputed Clause should be interpreted only as protecting Player from being terminated *by Copy Systems* in less than two years from July 1, 2013. This, it argues, is the only interpretation that harmonizes the APA, the employment contract, and the NCA and protects the interests of both parties.

In order for the Disputed Clause to carry the meaning urged by Copy Systems, it would have been necessary to add that the termination was at the instance of the employer in order for that provision to apply. Copy Systems' interpretation ignores the plain language of the parties' agreement and would require the inclusion of additional language to the parties' agreement that they apparently chose not to include. Although Copy Systems characterizes the agreement as primarily the purchase of Player's customer list by Copy Systems for $300,000.00, with a concomitant non-competition agreement by Player,[4] the agreement shows that this was only part of the parties' overall agreement.

The APA recites that in addition to the cash paid by Copy Systems, the additional consideration for the customer list was Copy Systems' agreement to employ Player under the terms of the employment contract. The APA recites that "[t]he Employment Contract was an essential piece of the compensation in the Agreement and [Player] would not have agreed to this Agreement without the Employment Contract." As previously seen, the employment agreement was for a term of four years and provided that Player would receive a $93,000.00 annual salary. Thus, the employment contract was a significant part of the consideration and of the transaction.

---

[4]In its reply brief, Copy Systems asserts for the first time that Player was paid $300,000.00 for his business and an additional $50,000.00 for the NCA, without any citation to the record. However, we note that in its counterclaim, Copy Systems alleged that "[Copy Systems] paid Player $250,000.00 for his business . . . and [an] additional $50,000.00 for the NCA."

At the same time, the employment contract did not guarantee Player's employment for four years, but gave both Copy Systems and Player the option of terminating the employment contract by giving the other party sixty days' written notice. This provision added some risk to the agreement. Copy Systems' risk is that it may not receive the full benefit of Player's knowledge, skill, and prior relationship with his customers, if Player decided to prematurely terminate his employment. On Player's part, he might risk the loss of a significant salary if Copy Systems were to prematurely terminate his employment.

The parties' agreement shows that each sought to minimize the likelihood of, and harmful effects of, a premature termination of Player's employment. The APA provided for an initial payment of $50,000.00, and ten monthly payments of $25,000.00 beginning in August 2013, thereby reducing the likelihood that Player would terminate his employment before one year had expired. In addition, although the APA provided a non-compete term of two years, the NCA provided a term of two years from July 1, 2013, or one year after the termination of Player's employment. This, at a minimum, assured Copy Systems that if Player remained employed in excess of two years, the non-competition agreement would continue for at least one year after his termination. Further, the employment contract allowed Copy Systems to terminate Player immediately if he violated the contract, with Player's only remedy being the salary already paid under the contract.

Both the APA and the NCA also contained the Disputed Clause. While this clause may have been understood as having been intended to protect Player from a premature, not-for-cause termination by Copy Systems, there is nothing that indicates that was its sole purpose. As Player

10

points out, one of the effects of the parties' agreement was to create a new, untried business relationship between the parties. In entering a new business relationship, there are risks and unanticipated consequences that may arise during the course of the relationship. The parties' agreement reflects that the parties provided mechanisms to address those risks, including a mechanism for either party to terminate the relationship. The Disputed Clause allowed Player to terminate his employment prior to July 1, 2015, if he deemed that the relationship was not beneficial to him. By doing so, he would be giving up an additional two years' salary, but that loss would be offset by the benefit of being released from the non-competition agreement.[5]

Thus, the parties' agreement shows that they contractually allocated the risks of, and benefits sought from, entering this relationship. Our "role is not to redistribute these risks and benefits but to enforce the allocation that the parties previously agreed upon." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 220 (Tex. 2003) (citing 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 31.5 (4th ed.2003)).[6]

---

[5]Copy Systems also argues that under this interpretation of the Disputed Clause, Player's promise not to compete was illusory, since he could have received the initial $50,000.00, terminated his employment, and begun competing with ETCS. However, a contract is construed in favor of mutuality, and "[i]t is presumed that when parties make an agreement they intend it to be effectual, not nugatory." *Tex. Gas Utils. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970) (citing *Portland Gasoline Co. v. Superior Mktg. Co.*, 243 S.W.2d 823 (Tex. 1951)). Further, even if Player's promise was illusory, the parties still formed an enforceable agreement when Player performed his promise by remaining employed by ETCS for almost two years. *See Mann*, 289 S.W.3d at 852.

[6]Copy Systems also argues that the inclusion of "for any reason other than a for cause termination" in the Disputed Clause supports its interpretation. We disagree. As previously seen, the employment contract provided that Copy Systems could terminate Player's employment immediately for cause, i.e., if he violated the employment contract. The inclusion of this phrase merely excepts a for-cause termination by Copy Systems from those terminations by Copy Systems that would trigger the non-competition agreement to become non-binding. There is nothing in the parties' agreement or in the Disputed Clause to indicate that the inclusion of this clause was meant to limit the party initiating the triggering termination to Copy Systems.

For these reasons, we find that the parties' agreement and the Disputed Clause unambiguously provides that if either party terminated Player's employment with Copy Systems prior to two years from July 1, 2013, other than for cause, the non-competition agreement would no longer be effective. Therefore, we find that the trial court did not err in granting Player's motion for summary judgment and entering final judgment for Player. We overrule Copy Systems' point of error.

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted:     November 4, 2016
Date Decided:       November 10, 2016

12