

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00013-CV

_____

ROBYN DALE MURPHY, JR., AKA ROBIN DALE MURPHY, JR., Appellant

V.

EXETER FINANCE CORP., Appellee

On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 2016-2095-CCL2

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

# O P I N I O N

After entering into a written contract to purchase a truck, Robyn Dale Murphy, Jr., aka Robin Dale Murphy, Jr., sued Exeter Finance Corporation, raising claims for usury, deceptive trade practices, and breach of contract based on allegations that Exeter charged or received interest exceeding the legally allowable rate. Exeter denied the allegations and filed special exceptions, a traditional motion for summary judgment, and a no-evidence motion for summary judgment. Murphy responded with his own motion for summary judgment. The trial court denied Murphy's motion for summary judgment and granted both Exeter's traditional and no-evidence motions for summary judgment.

On appeal, Murphy contends that the trial court erred in granting Exeter's motions for summary judgment as to his claims that Exeter had committed usury, had engaged in deceptive trade practices, and had breached its contract with him. Murphy also argues that the trial court erred in denying his motion for summary judgment (including his claim to recover attorney fees) and in granting attorney fees to Exeter.

We reverse the trial court's award of attorney fees to Exeter because the fees were not incurred to enforce the contract, but we otherwise affirm the trial court's judgment because Murphy failed to produce more than a scintilla of evidence in support of his claims for usury, deceptive trade practices, and breach of contract.

## I.      Factual and Procedural Background

On or about June 26, 2014, Murphy entered into a written Retail Sales Contract, Simple Finance Charge Agreement with Excel Pre-Owned Super Center to purchase a 2011 Dodge Ram

1500 truck. Excel assigned the contract to Exeter. Murphy paid $17,330.00 for the truck, making a $1,000.00 down payment with the remaining principal amount of $16,330.00 to be financed at an equivalent rate of 20.6%, resulting in a total finance charge of $12,406.64 if all payments were timely and fully made, for a total sales price of $29,736.64. Murphy agreed to make seventy-two payments of $399.12 beginning on August 5, 2014. All of this was set out in the contract, to which Murphy agreed by affixing his signature.

On December 29, 2016, Murphy filed suit against Exeter[1] alleging that Exeter demanded, charged, and/or received usurious interest. He alleged that this action rendered Exeter liable for penalties for having practiced usury and for deceptive trade practices under Sections 17.46, subsections (b)(5) and (12), of the Texas Business and Commerce Code (the Deceptive Trade Practices Act (DTPA)), in addition to having breached the contract with Murphy. Exeter filed a denial and special exceptions. Thereafter, Exeter filed a no-evidence motion for summary judgment and a traditional motion for summary judgment, both of which included a claim to recover attorney fees. Attached to the motions were a copy of the original contract signed by Murphy, a schedule setting out Murphy's payment history (this also showing the allocation of each such payment), a copy of the Motor Vehicle Rate Chart issued by the Texas Office of Consumer Credit Commissioner, and an affidavit from Exeter's attorney which buttressed the claim for attorney fees. The attorney's affidavit claimed "that the attorney's fees and expenses in the amount of $5,550.00 is a reasonable fee for the services rendered in pursuing this claim" and that

---

[1]The petition also named Excel as a defendant, but Murphy later nonsuited his claims against Excel, leaving Exeter as the sole defendant.

[i]n the event this matter is appealed to The Court of Appeals, it is [the attorney's] opinion that $7,500.00 is a reasonable and necessary fee. In the event a writ of error is filed in the Texas Supreme Court, it is [the attorney's] opinion that $5,500.00 is a reasonable and necessary fee. In the event a writ of error is granted, it is [the attorney's] opinion that $5,500.00 is a reasonable and necessary fee.

Murphy filed a response to Exeter's motions and a traditional motion for summary judgment, arguing that the copy of the original contract and the payment schedule, together with the evidence attached to his motion, supported and conclusively proved his claims. The trial court granted Exeter's motions for summary judgment and denied Murphy's motion. Murphy filed this appeal.

## II. Is There Evidence to Support Murphy's Claims for Usury?

In his first three points of error, Murphy contends that the trial court erred in granting Exeter's no-evidence motion for summary judgment as to his claims of usury, claimed violations of the DTPA, and allegations that Exeter had breached the contract.

We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). "When a party moves for summary judgment on both no-evidence and traditional grounds, the appellate court should ordinarily address the no-evidence grounds first." *Burleson v. Lawson*, 487 S.W.3d 312, 317 (Tex. App.—Eastland 2016, no pet.) (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)).

A no-evidence summary judgment is essentially a pretrial directed verdict. Therefore, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). We must determine whether Murphy produced any evidence of probative force to raise a fact issue on the material questions presented. *See id.*; *Woodruff v. Wright*, 51 S.W.3d 727,

734 (Tex. App.—Texarkana 2001, pet. denied). Murphy will defeat Exeter's no-evidence summary judgment motion if Murphy presented more than a scintilla of probative evidence on each element of its claim. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Rhine v. Priority One Ins. Co*., 411 S.W.3d 651, 657 (Tex. App.—Texarkana 2013, no pet.). "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Crocker v. Babcock*, 448 S.W.3d 159, 163 (Tex. App.—Texarkana 2014, pet. denied) (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion of a fact.'" *Id*. (quoting *King Ranch, Inc*., 118 S.W.3d at 751). During our analysis, "we review the evidence in the light most favorable to the non-movant, credit evidence favorable to that party if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Sage v. Howard*, 465 S.W.3d 398, 402 (Tex. App.—El Paso 2015, no pet.) (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *King Ranch, Inc.*, 118 S.W.3d at 751).

Murphy's petition contends that Exeter committed usury, violated the DTPA, and breached the contract by charging him interest over and above the 20.6% agreed to in the contract and by applying his payments primarily or entirely to accrued interest rather than his principal balance.[2] In order to determine whether the evidence Murphy produced has merit sufficient to overcome Exeter's no-evidence motion for summary judgment, we must first examine the applicable law and Exeter's application of that law to this transaction.

---

[2]Murphy does not argue that the contract itself or the contract-specified finance rate of 20.6% is usurious.

5

If one looks only at the usury laws that prevail in Texas, Murphy's claim might have some merit. However, the applicable laws do not fit so neatly into one box. The motor vehicle installment contract Murphy entered into is governed by Chapter 348 of the Texas Finance Code. *See* TEX. FIN. CODE ANN. §§ 348.0015(a), 348.007(d) (West 2016). Under the contract signed by Murphy, he was not charged interest, but rather, a time price differential[3] (a daily finance charge in addition to the principal) of $12.50 per $100.00 per year on the principal balance which, over seventy-two months, is the equivalent of the 20.6% annualized percentage rate specified in the contract.[4] *See* TEX. FIN. CODE ANN. § 348.104(d) (West 2016); 7 TEX. ADMIN. CODE § 84.201(d)(2)(B)(iii) (West, West current through July 27, 2018) (Office of Consumer Credit Comm'r, Time Price Differential).

Under the terms of the contract, Murphy was assessed a daily finance charge (the amount of which is determined by using the true daily earnings method that is based on the annualized percentage rate and the outstanding principal balance divided by the 365 days in a year: $16,330 x 20.6% = $3,368.98 ÷ 365 = $9.21638 per day). *See* 7 TEX. ADMIN. CODE § 84.201(b), (d)(3)(A) (West, West current through July 27, 2018) (Office of Consumer Credit Comm'r, Time Price

---

[3]A time price differential is not interest. Interest is "compensation for the use, forbearance, or detention of money. The term does not include time price differential, regardless of how it is denominated." TEX. FIN. CODE ANN. § 301.002(a)(4) (West 2016). A time price differential is "an amount, however denominated or expressed," that is added to the sales price, principal amount, or amount financed "paid or payable to the seller by the purchaser for the privilege of paying the offered sales price after the time of sale," such as through a retail installment contract. TEX. FIN. CODE ANN. § 301.002(a)(16) (West 2016), § 348.001(9) (West Supp. 2017).

[4]The Texas Office of Consumer Credit Commissioner conveniently calculates the equivalent annualized percentage rates based on the allowable add-on rate specified in Section 348.104, the model of the vehicle, the year of purchase, and the number of payments. TEXAS OFFICE OF CONSUMER CREDIT COMMISSIONER, CURRENT MOTOR VEHICLE RATE CHART (2018), https://occc.texas.gov/industry/motor-vehicle-sales-finance-mvsf/rate-charts; TEXAS OFFICE OF CONSUMER CREDIT COMMISSIONER, SUPPLEMENT TO MOTOR VEHICLE RATE CHART (2018), https://occc.texas.gov/industry/motor-vehicle-sales-finance/rate-charts/supplement.

Differential).  Under this formula, the $9.21638 daily finance charge accrued every day from the day after the contract was signed until a payment sufficient to reduce the principal was made.  If the seventy-two scheduled payments of $399.12 were made in full and on time, the principal would slowly decrease, which under the above formula, would result in a lower daily finance charge each successive month.  *See* 7 TEX. ADMIN. CODE § 84.201(d)(3)(A), (E)(i) (West, West current through July 27, 2018) (Office of Consumer Credit Comm'r, Time Price Differential).  However, the contract clearly stated that payments would be applied first to "earned but unpaid finance charge" then "to anything else [Murphy] owe[d] under [the] Agreement," explaining, "If you do not timely make all your payments in at least the correct amount, you will have to pay more Finance Charge" and, "If you make scheduled payments early, your Finance Charge will be reduced (less).  If you make your scheduled payments late, your Finance Charge will increase."  *See* 7 TEX. ADMIN. CODE § 84.201(d)(3)(E)(i) (Office of Consumer Credit Comm'r, Time Price Differential).

As mentioned previously, Murphy attached the following to his response to Exeter's no-evidence motion for summary judgment:  (a) a statement of account from Exeter showing his payments from August 2014 through March 2016, and the allocation of each payment toward finance charge[5] and toward principal; (b) a list of calculations listing how much of each payment was allocated to the finance charge versus the 20.6% of each payment Murphy alleges should have been allocated thereto; and (c) Murphy's affidavit alleging, in part, that Exeter told him that he "had to pay all interest first before any principal payments would be credited to [his] account."

---

[5]Even though the statement of account labels the allocation for a finance charge as "interest," this is not an interest-based transaction, and a time price differential, no matter how it is denominated or what it is called, is not interest. *See* TEX. FIN. CODE ANN. § 301.002(a)(4), (16) (West 2016), § 348.001(9); 7 TEX. ADMIN. CODE § 84.201(b), (d)(3)(A) (Office of Consumer Credit Comm'r, Time Price Differential).

Murphy's first payment of $399.12 as prescribed in the contract was due on August 5, 2014. The finance charge accrued from June 27, 2014, through the scheduled date of Murphy's first payment at a rate of $9.21638 per day. To determine if any payment or allocation shown in the statement of account amounts to evidence of usury in violation of Chapter 348 of the Texas Finance Code, we examine several of the payments and allocations listed in the statement. That examination reveals the following:

1.  On August 12, 2014 (seven days after his scheduled payment as set out in the contract was to be made), Murphy paid $400.00. As of that date, Murphy owed $433.17 in accrued finance charge (47 days x $9.21638 = $433.17). As per the terms of the contract, because the payment was less than the total accrued finance charges, his payment was allocated entirely to the finance charges, leaving a balance of $33.17 in unpaid finance charges.

2.  Murphy failed to pay the scheduled September 5, 2014 payment. On October 11, 2014 (sixty days after the August payment under the contract was made), Murphy paid another $400.00. As of that date, Murphy owed $586.15 in accrued and carried-over, unpaid finance charge (60 x $9.21638 = $552.98 + $33.17 = $586.15). His payment of $400.00 was allocated entirely to finance charges, leaving a balance of $186.15 in unpaid finance charges.

3.  Murphy failed to make the payment prescribed under the contract to be paid on November 5, 2014. On December 11, 2014 (sixty days after the payment prescribed in the contract to have been paid in October), Murphy paid $890.05. As of that date, Murphy owed $748.35 in accrued and carried-over, unpaid finance charge (60 x $9.21638 = $562.20 + $186.15 = $748.35). Because his payment exceeded the total finance charges, $141.70 was allocated to the principal balance ($890.05 - $748.35 = $141.70), reducing the principal from $16,330 to $16,188.30. Because the principal balance was reduced, the daily finance rate was reduced to $9.13641 ($16,188.30 x 20.6% = $3,334.79 ÷ 365 = $9.13641).

4.  On December 22, 2014, eleven days after his previous payment, Murphy paid $140.00. As of that date, Murphy owed $100.50 in finance charges (11 x $9.13641 = $100.50). Because his payment exceeded the accrued finance charges, $39.50 was allocated to the principal balance ($140.00 - $100.50 = $39.50), reducing the principal from $16,188.30 to $16,148.80, this reducing the daily finance rate to $9.114117 ($16,148.80 x 20.6% = $3,326.6528 ÷ 365 = $9.114117).

The numerous remaining payments and allocations shown in the statement of account are consistent in formulation and allocation with those detailed hereinabove.

Here, the finance charges and allocations shown in the statement of account follow the provisions of the contract as well as the rates and mathematical formulas and allocations authorized by Chapter 348 of the Texas Finance Code. *See* TEX. FIN. CODE ANN. § 348.104 (West 2016); 7 TEX. ADMIN. CODE § 84.201(d)(3)(A), (E)(i) (Office of Consumer Credit Comm'r, Time Price Differential). Murphy's list of calculations is apparently based on a misunderstanding of the transaction and the law governing it. Therefore, Murphy's list of calculations is inaccurate and is, therefore, not probative evidence. Similarly, Murphy's affidavit is not evidence of sufficient probative force to raise a fact issue on any material question, because the terms of the contract specify that payments will first be allocated to accrued but unpaid finance charges with any remainder being allocated to the principal. This is in accord with Section 84.201(d)(3)(A) of the Texas Administrative Code. Therefore, even granting all inferences in Murphy's favor, we find that the statement of account, Murphy's listed calculations, and his affidavit fail to present any evidence of probative value to support his usury claim against Exeter. Accordingly, we overrule this point of error and affirm the trial court's judgment granting Exeter's no-evidence motion for summary judgment as to Murphy's usury claim.

Murphy's DTPA causes of action pursuant to Section 17.65, subsection (b)(5) and (12), of the Texas Business and Commerce Code are based on his claims that in violation of the contract, Exeter demanded, charged, and/or received usurious interest and committed the "usury frequent practice of applying monthly payments illegally to interest, with frequent, if not all, payments

9

never being credited properly to reduction of principal." Similarly, Murphy argues that Exeter violated the terms of the contract because "Exeter charges, collects, and receives usurious interest" and "immediately applies [his] payments to alleged accrued and unpaid interest, and not finance charges." However, as detailed hereinabove, Murphy has produced no evidence of probative force that Exeter charged Murphy interest, assessed him finance charges in excess of the rates agreed to in the contract or the statutory rates of Chapter 438 of the Finance Code, or allocated Murphy's payments in a manner that violated either the contract or Texas law. Therefore, we overrule his second and third points of error and affirm the trial court's grant of Exeter's no-evidence motion for summary judgment as to Murphy's DTPA and breach of contract claims.

### III.    Was Exeter Entitled to an Award of Attorney Fees?

In granting Exeter's no-evidence motion for summary judgment, the trial court awarded Exeter $5,500.00 in attorney fees and expenses, as well as conditional awards in the event of successful appeals to the court of appeals and the Texas Supreme Court. In his final point of error, Murphy contends that the trial court erred in awarding Exeter attorney fees.

Whether a party is entitled to recover attorney fees is a question of law that we review de novo. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999) (per curiam). In Texas, attorney fees may not be recovered from an opposing party unless they are authorized by statute or by contract between the parties. *Id.* at 95; *Travelers Indem. Co. of Conn. v. Mayfield*, 923 S.W.2d 590, 593 (Tex. 1996). No statute allows attorney fees to be awarded for successfully prosecuting a no-evidence motion for summary judgment, so they must be authorized by the

10

contract for the trial court's award to be proper. Exeter contends that the language of the contract signed by Murphy entitles it to an award of attorney fees, and the relevant contract provision states:

> If [Exeter] hire[s] an attorney who is not [its] employee to enforce this contract, [Murphy] will pay reasonable attorney's fees and court costs as the applicable law allows. [Murphy] will also pay [Exeter's] reasonable out-of-pocket expenses incurred in connection with retaking, holding and selling the vehicle as the applicable law allows.

In construing a written contract, our primary concern is to ascertain the intentions of the parties as expressed in the instrument. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005); *Craig Sessions, M.D., P.A. v. TH Healthcare, Ltd.*, 412 S.W.3d 738, 742 (Tex. App.—Texarkana 2013, no pet.). A contract term is given its plain and ordinary meaning unless the instrument indicates a different meaning is intended by the parties. *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009); *Craig Sessions, M.D., P.A.*, 412 S.W.3d at 742.

Here, the contract entitles Exeter to recover attorney fees only if [it] "hire[s] an attorney . . . to enforce this contract." Provisions in contracts which allow the recovery of attorney fees in suits to "enforce a contract" are narrowly construed.[6] *See, e.g.*, *Fazio v. Cypress/GR Houston I, L.P.*, 403 S.W.3d 390, 398 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (en banc); *Oat Note, Inc. v. Ampro Equities, Inc.*, 141 S.W.3d 274, 280–81 (Tex. App.—Austin 2004, no pet.). Though

---

[6]Contract provisions allowing the award of attorney fees to the prevailing party in an action "related to," "brought under," or "with respect to" the contract are interpreted rather broadly. *See Robbins v. Capozzi*, 100 S.W.3d 18, 26–27 (Tex. App.—Tyler 2002, no pet.) (holding party entitled to recover attorney fees for successfully defending fraud and DTPA claims under contract provision for such fees when agreement allowed their recovery by "[t]he prevailing party in any legal proceeding brought under or with respect to the transaction described in his contract"); *Rich v. Olah*, 274 S.W.3d 878, 888 (Tex. App.—Dallas 2008, no pet.) (holding that fraud and DTPA tort claims related to contract for purpose of provision awarding attorney fees when contract provided for recovery by "prevailing party in any legal proceeding related to this contract").

11

Exeter's pleadings allege that Murphy defaulted on the contract, the trial court made no such finding. Exeter did not seek in this suit to repossess the vehicle, failed to bring a counterclaim or other cause of action against Murphy for breach of contract, and sought no damages or other relief from Murphy that would provide a contractual basis for the award of attorney fees. Therefore, Exeter was not entitled to an award of attorney fees because, by its actions in this case, it did not seek "to enforce" the contract against Murphy. *See Fazio*, 403 S.W.3d at 398; *Oat Note, Inc.*, 141 S.W.3d at 280–81. We sustain this point of error.

We reverse the trial court's award of attorney fees to Exeter, but affirm the remainder of the trial court's order granting Exeter's no-evidence motion for summary judgment.

Bailey C. Moseley
Justice

Date Submitted:     July 12, 2018
Date Decided:       August 9, 2018